No. 102,400

STATE OF KANSAS, *Plaintiff/Appellee*, v. VALERIE GONZALEZ, *Defendant/Appellee*, and SARAH SWEET-MCKINNON, *Contemner/Appellant*.

(234 P.3d 1)

Opinion filed June 18, 2010.

*Roger L. Falk*, of Law Office of Falk and Cotton, P.A., of Wichita, argued the cause and was on the briefs for appellant.

*Kristafer R. Ailslieger*, assistant solicitor general, argued the cause, and *Stephen D. Maxwell*, senior assistant district attorney, *Keith E. Schroeder*, county attorney, and *Steve Six*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Sarah Sweet-McKinnon, the Chief Public Defender for the Reno County Public Defender's office, appeals a judgment finding her guilty of direct civil contempt and imposing a $1,000 per day coercive sanction. The contempt judgment and sanction arose out of McKinnon's refusal to testify under subpoena by the State concerning a statement made by a former client, who expressed an intent to commit perjury in the prosecution of defendant Valerie Gonzalez. We transferred the appeal from the Court of Appeals on McKinnon's motion pursuant to K.S.A. 20-3017.

## FACTUAL AND PROCEDURAL BACKGROUND

In early 2007, McKinnon was appointed to represent defendant Gonzalez on a charge of first-degree murder. McKinnon or one of the attorneys she supervised in the Reno County Public Defender's Office represented another defendant on an unrelated case who was in custody at the Reno County Jail at the same time as Gonzalez. At some point, the other client informed her counsel that she intended to commit perjury in Gonzalez' case. The public defender's office filed a motion to withdraw from the other client's case. The case against Gonzalez was dismissed in June 2007.

In January 2009, the State refiled the case against Gonzalez, and McKinnon was again appointed to represent her. The new complaint listed several endorsed witnesses who had not been listed on the 2007 complaint, seven of which were former clients of the public defender's office who had been housed at the Reno County Jail at the same time as Gonzalez in 2007. Among them was the former client who had expressed the intent to commit perjury in Gonzalez' case.

Given the seven newly endorsed witnesses, McKinnon filed a motion to withdraw as Gonzalez' attorney. The motion included the following statements:

"3. In all of the prior representations of the seven prior Public Defender clients, the movant has actual information by virtue of the prior representation that would

severely restrict the scope of cross-examination of these prosecution witnesses to avoid possible violation of the attorney client privileges of the state's witnesses, including, but not limited to:

    'a. A statement by a former client of the Public Defender's office that was made during representation that the prior client intended to commit perjury in Ms. [Gonzalez'] case, who is now a prosecution witness.' "

The district judge granted McKinnon's motion to withdraw and appointed new counsel for Gonzalez.

The State then filed a motion to issue a subpoena for McKinnon to appear and testify at Gonzalez' preliminary hearing. The motion was based on Kansas Rule of Professional Conduct (KRPC) Rule 3.8(e) (2009 Kan. Ct. R. Annot. 565), which prohibits a prosecutor from subpoenaing a lawyer in a criminal proceeding "to present evidence about a past or present client unless the prosecutor reasonably believes" the evidence is not protected by privilege, is essential to the successful completion of the prosecution, and "there is no other feasible alternative to obtain the information[.]" In its motion, the State requested that the district judge make findings on each of the KRPC 3.8(e) factors. The State explained it was using this unusual procedure out of an "abundance of caution and in light of the serious nature of causing a subpoena [to issue] for a criminal defense attorney[.]"

At the hearing on the motion, the State called Reno County Police Detective John Moore. Moore had conducted the investigation to determine which of the State's endorsed witnesses might have made the statement referenced in McKinnon's motion to withdraw. Moore's testimony about those efforts is as follows:

"Q: [Prosecutor] And did you, as part of this investigation in the case, did you attempt to . . . locate and interview the witness endorsed by the State that could possibly be the witness that Ms. McKinnon indicated may intend to commit perjury?

"A: [Moore] Yes.

"Q: Okay. And when you interviewed these particular witnesses, how many total was there?

"A: Sixteen.

. . . .

"Q: Okay. And were you able to, during the interviews of these witnesses, find any witness who would support or agree with the statement made by Ms. McKinnon in the motion?

"A: No.

"Q: In fact did some of the witnesses indicate that they never even heard of Ms. McKinnon?

"A: I have at least five who had never heard of her.

"Q: Okay. And the ones who had heard of her, did those witnesses indicate whether or not they had ever discussed the Gonzalez case with Ms. McKinnon?

"A: Not one of the witnesses ever said that they had discussed this case with Ms. McKinnon.

"Q: Okay. Based on this particular investigation, were you able to find any support in the witnesses, or evidence to support the allegation that was made?

"A: No.

"Q: Did you have any other avenues in the investigation to undertake other than doing this particular interview of these witnesses? Did you have any other ways you could go to try to look into it?

"A: No, I've tried to locate each and every one of them. I did speak to each and every one of them.

"Q: Did you, in your own mind, have any other avenues of possible investigation other than what you already did?

"A: No."

The district judge granted the State's motion to issue the subpoena, ruling that each of the three KRPC 3.8(e) factors had been established.

On the first factor, the district court held that the information sought was not protected by the attorney-client privilege because the crime-fraud exception applied. See K.S.A. 60-426(b)(1) (attorney-client privilege does not apply to communication when sufficient evidence, aside from communication itself, establishes legal service sought, obtained to enable, aid commission, planning of crime).

On the second factor, the district judge held that the information sought was essential to the successful completion of the prosecution. Because the integrity of the prosecution could be affected if a prosecution witness had expressed the intent to commit perjury, and because the prosecutor needed to exercise ethical judgment on whether to present the witness, the judge believed it to be essential that the State know the witness' identity.

The district judge also found the State had established the third factor—that there was no other feasible alternative to obtain the information—because of Moore's testimony on his interviews.

The State then issued and served McKinnon with a subpoena to appear and testify. The prosecutor informed McKinnon that he intended to ask her the following questions concerning the former client's expressed intent to commit perjury in Gonzalez' case: Who made the statement? When was it made? What words were used? What were the circumstances? In what form did she receive that communication?

McKinnon filed a motion to quash the subpoena, arguing that answering the prosecutor's questions would violate her duty of client confidentiality under KRPC 1.6 (2009 Kan. Ct. R. Annot. 468) and KRPC 1.9 (2009 Kan. Ct. R. Annot. 490), exposing her to disciplinary action.

The district judge denied McKinnon's motion to quash. The judge again held that KRPC 3.8(e) supported the subpoena, *i.e.*, that no privilege existed under the first factor and that McKinnon had failed to offer sufficient evidence or argument to rebut the second and third factors. Further, the district judge rejected McKinnon's arguments about her ethical duty of confidentiality, concluding that the rules did not prohibit McKinnon from revealing the information. Specifically, the judge noted that KRPC 1.6(b)(1) allows an attorney to reveal client confidences to prevent a client from committing a crime, and KRPC 1.6(b)(2) protects an attorney from disciplinary action for revealing confidential client information in compliance with a court order.

Immediately after the district judge's ruling, the prosecutor called McKinnon to the witness stand. After a few preliminary questions, the prosecutor asked McKinnon who had made the statement set out in paragraph 3.a of her motion to withdraw. McKinnon refused to answer the question. The judge then ordered McKinnon to answer the question. She again refused. The judge found McKinnon in direct civil contempt of court and imposed a fine of $1,000 per day until the contempt was purged by McKinnon's agreement to answer the question.

McKinnon posted an appeal bond to stay execution of the contempt order pending this appeal. She now raises three interlocking issues. First, she challenges the district judge's decision that the information was not protected by attorney-client privilege because

of the crime-fraud exception under K.S.A. 60-426(b)(1). Second, if we determine that the district judge's decision on applicability of the attorney-client privilege was erroneous, McKinnon argues, the contempt judgment cannot stand. Third, even if the contempt stands, McKinnon asserts, the coercive sanction is excessive.

The State responds that the district judge properly applied the crime-fraud exception to the attorney-client privilege and that McKinnon was properly ordered to answer the question seeking the name of her former client because a client's identity does not qualify as a privileged communication. The State also argues that the contempt judgment should stand even if the district court's decision on privilege was in error, as refusal to comply with a court order is contemptuous even if it is later determined that the order was erroneous. Last, the State contends that the sanction imposed was not an abuse of discretion.

## ANALYSIS

To begin our analysis, we must address jurisdiction.

In this appeal from the order finding her in contempt and imposing a sanction, McKinnon's arguments also are directed at the propriety of underlying rulings on the issuance of the subpoena and the denial of the motion to quash. Although the parties have not questioned our jurisdiction to address the validity of the orders that underlie the contempt judgment, it is our duty to consider the presence or absence of jurisdiction on our own initiative. See *Vorhees v. Baltazar*, 283 Kan. 389, 397, 153 P.3d 1227 (2007) (subject matter jurisdiction may be raised at any time, even on court's own motion); *State v. Phinney*, 280 Kan. 394, 398, 122 P.3d 356 (2005) ("The right to appeal is purely statutory, and an appellate court has a duty to question jurisdiction on its own initiative.").

K.S.A. 20-1205 and K.S.A. 60-2102(a)(4) provide jurisdiction to address the contempt judgment as well as the underlying decisions on the issuance of the subpoena and the motion to quash. K.S.A. 20-1205 provides the right to appeal from a contempt judgment and specifically states that such an appeal is to be taken "in the same manner as is provided by law in civil cases." The applicable civil appeal statute, K.S.A. 60-2102(a)(4), expressly provides that

in an appeal from a final decision, "any act or ruling from the beginning of the proceedings shall be reviewable." In addition, the United States Supreme Court has made clear that an order underlying a civil contempt judgment is reviewable on appeal of the contempt. See *United States v. Mine Workers*, 330 U.S. 258, 294-95, 91 L. Ed. 884, 67 S. Ct. 677 (1947) (unlike criminal contempt, validity of disobeyed order may be reviewed in civil contempt context; right to remedial relief falls when the underlying order is proved to have been in error); compare *State v. Alston*, 256 Kan. 571, 584-86, 887 P.2d 681 (1994) (collateral bar rule prohibits review of the validity of underlying order in criminal contempt appeal, subject to exceptions).

Several standards of review require consideration in resolving this case.

An appellate court reviews a determination that conduct is contemptuous under a de novo standard; contempt sanctions are reviewed for abuse of discretion. *State v. Jenkins*, 263 Kan. 351, 356, 950 P.2d 1338 (1997); see also *In re M.R.*, 272 Kan. 1335, 1342, 38 P.3d 694 (2002) (same).

A district court judge's decision on a motion to quash a subpoena calling for disclosure of privileged information is governed generally by K.S.A. 2009 Supp. 60-245(c)(3)(A)(iii), which provides: "On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . requires disclosure of privileged or other protected matter and no exception or waiver applies." Another subsection of the statute provides that a court shall quash or modify a subpoena that "subjects a person to undue burden." K.S.A. 2009 Supp. 60-245(c)(3)(A)(iv). A further subsection, K.S.A. 2009 Supp. 60-245(c)(3)(B)(iii), is worded more permissively, saying the court "may" quash or modify a subpoena under certain circumstances not present here, or "may" order appearance "only upon specified conditions" if "the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated."

We have previously reviewed district court decisions on motions to quash subpoenas for abuse of discretion, despite the statute's mixed use of "shall" and "may." See *Hill v. Farm Bur. Mut. Ins. Co.*, 263 Kan. 703, 704, 952 P.2d 1286 (1998) ("Control of discovery is entrusted to the sound discretion of the trial court"; decision quashing subpoena duces tecum reviewed for abuse of discretion); *In re Tax Appeal of Collingwood Grain, Inc.*, 257 Kan. 237, 256, 891 P.2d 422 (1995) (abuse of discretion standard applied in reviewing motion to quash an administrative subpoena); *In re Pennington*, 224 Kan. 573, 577, 581 P.2d 812 (1978), *cert. denied* 440 U.S. 929 (1979) (abuse of discretion standard applied in reviewing district court's denial of news reporter's motion to quash); *In re Investigation into Homicide of T.H.*, 23 Kan. App. 2d 471, 480, 932 P.2d 1023 (1997) (decision on motion to quash inquisition subpoena reviewed for abuse of discretion).

Discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. *In re Marriage of Bradley*, 282 Kan. 1, 7, 137 P.3d 1030 (2006). Under this standard, an appellate court will not disturb a discretionary decision unless no reasonable person would have taken the view adopted by the district court. See *Vorhees v. Baltazar*, 283 Kan. at 393.

Still, even under the deferential abuse of discretion standard of review, an appellate court has unlimited review of legal conclusions upon which a district court judge's discretionary decision is based. *Kuhn v. Sandoz Pharmaceuticals Corp.*, 270 Kan. 443, 456, 14 P.3d 1170 (2000). Because " '[a] district court by definition abuses its discretion when it makes an error of law. . . [t]he abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.' " *Kuhn*, 270 Kan at 456 (quoting *Koon v. United States*, 518 U.S. 81, 100, 135 L. Ed. 2d 392, 116 S. Ct. 2035 [1996]); see also *State v. Shopteese*, 283 Kan. 331, 340, 153 P.3d 1208 (2007) (district judge's discretionary decision protected under abuse of discretion standard "if reasonable persons could differ upon the propriety of the decision as long as the discretionary decision is made within and takes into account the applicable legal standards"; what constitutes abuse of discretion

necessarily varies "depending upon the character of the question presented for determination").

Moreover, even if a decision is entrusted to the discretion of a district court judge, and he or she correctly understands and applies the controlling legal standards, the facts upon which the discretionary decision must depend may still be challenged on appeal as unsupported by substantial competent evidence in the record. See *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 L. Ed. 2d 359, 110 S. Ct. 2447 (1990) (legal conclusions and fact findings upon which discretionary decision based reviewable for abuse of discretion; district court necessarily abuses its discretion if ruling based on an "erroneous view of the law or on a clearly erroneous assessment of the evidence"); *cf. Saucedo v. Winger*, 252 Kan. 718, Syl. ¶ 4, 850 P.2d 908 (1993) ("A decision which is contrary to the evidence or the law is sometimes referred to as an abuse of discretion, but it is nothing more than an erroneous decision or a judgment rendered in violation of law."); see also *Flautt & Mann v. Council of City of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (because abuse of discretion may connote error of law, error of fact, or error in substance, form of trial court's order, review consists of three parts: "(1) whether the factual basis of the decision is supported by sufficient evidence; (2) whether the trial court has correctly identified and properly applied the applicable legal principles; and (3) whether the trial court's decision is within the range of acceptable alternatives").

In Kansas, a district court's factual findings are reviewed under the substantial competent evidence standard. *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 915-16, 157 P.3d 1109 (2007); *State v. Jones*, 279 Kan. 71, 77, 106 P.3d 1 (2005). In federal court, Fed. R. Civ. Proc. 52(a)(6) requires a "clearly erroneous" standard of review for factual findings. The Kansas substantial competent evidence standard and its federal counterpart are very similar to the abuse of discretion standard. All three provide a great deal of deference to a district court's decision made within a zone of reasonableness. See *Cooter & Gell*, 496 U.S. at 400-01 (when an appellate court reviews a district court's fact findings, the abuse of discretion standard and the clearly erroneous standard are "indistinguishable"

as both protect district court determinations that fall "within a broad range of permissible conclusions").

A district court abuses its discretion only when no *reasonable* person would take the view adopted by the district court. *State v. Sanchez-Cazares*, 276 Kan. 451, 454, 78 P.3d 55 (2003). Similarly, substantial competent evidence is that which

"possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can *reasonably* be resolved. In other words, substantial evidence is such legal and relevant evidence as a *reasonable* person might accept as being sufficient to support a conclusion." (Emphases added.) *Drach v. Bruce*, 281 Kan. 1058, Syl. ¶ 2, 136 P.3d 390 (2006), *cert. denied* 549 U.S. 1278 (2007).

In addition, as we have held, "[j]udicial discretion will vary depending upon the character of the question presented for determination." *State v. Shopteese*, 283 Kan. at 340. When a discretionary decision requires fact-based determinations, a district court abuses its discretion when the decision is based on factual determinations not supported by the evidence.

Finally, a de novo standard comes into play in this case on the question of privilege. If the underlying facts concerning the applicability of a privilege are not in dispute, appellate review is plenary. See *State v. Jones*, 287 Kan. 547, 554, 198 P.3d 756 (2008) (citing *Butler v. HCA Health Svcs. of Kansas, Inc.*, 27 Kan. App. 2d 403, 436-37, 6 P.3d 871 [1999]) (when underlying facts undisputed, existence of attorney-client privilege reviewed de novo).

*General Distinction Between Privilege Law and Attorney Ethics Rules on Client Confidences*

The parties have argued both the attorney-client privilege and the various disciplinary rules concerning an attorney's ethical duties with respect to client confidences and, at times, appear to confuse the two. Because there are fundamental and significant differences between these lines of authority and their applicability, it is necessary that we first clarify that we face one and not the other here.

A privilege is a rule of evidence that allows a person "to shield [a] confidential communication or information from compelled disclosure during litigation." Imwinkelried, The New Wigmore: Evi-

dentiary Privileges § 1.1, p. 2 (2d ed. 2009). In Kansas, the attorney-client privilege is statutory. It is found in the code of evidence at K.S.A. 60-426, which reads in pertinent part:

"(a) . . . [E]xcept as otherwise provided by subsection (b) of this section communications found by the judge to have between lawyer and his or her client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege . . . (2) to prevent his or her lawyer from disclosing it. . . . The privilege may be claimed by the client in person or by his or her lawyer . . . .

"(b) . . . . Such privileges shall not extend (1) to a communication if the judge finds that sufficient evidence, aside from the communication, has been introduced to warrant a finding that the legal service was sought or obtained in order to enable or aid the commission or planning of a crime or a tort . . . ." K.S.A. 60-426.

This statute protects from compelled disclosure certain confidential communications made between an attorney and client in the course of their professional relationship. The privilege applies narrowly because, like all privileges, it operates to deprive the fact-finder of otherwise relevant information. *In re Bryan*, 275 Kan. 202, 222, 61 P.3d 641 (2003) (citing *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 373, 22 P.3d 124 [2001]).

In contrast, an attorney's ethical duty of client confidentiality arises under the Kansas Rules of Professional Conduct and is part of a system of professional ethical standards designed to "provide guidance to lawyers and . . . a structure for regulating conduct through disciplinary agencies." Supreme Court Rule 226, Scope [20] (2009 Kan. Ct. R. Annot. 405). A violation of an ethical rule "should not itself give rise to a cause of action against a lawyer" or "necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation." Supreme Court Rule 226, Scope [20]; see also *OMI Holdings, Inc. v. Howell*, 260 Kan. 305, 325, 918 P.2d 1274 (1996) (discussing Supreme Court Rule 226; ethics rules do not impose legal duty on attorneys). In contrast to the attorney-client privilege, which is a rule of evidence and applies only when the attorney "may be called as a witness or otherwise required to produce evidence concerning a client[,]" the attorney's ethical duty of confidentiality under the disciplinary rules "applies in all situations *other than those where evidence is sought from the lawyer through compulsion of law.*" (Emphasis

added.) Comment [5] to KRPC 1.6 (2009 Kan. Ct. R. Annot. 469). Further, in contrast to the narrow scope of the attorney-client privilege, the ethical duty of client confidentiality applies broadly to *all* information related to representation of a client. KRPC 1.6(a); Comment [5] (2009 Kan. Ct. R. Annot. 468-69). It is expansive because the cloak of confidentiality is intended to "facilitate the full development of facts essential to proper representation of the client[.]" Comments [2] and [4] to KRPC 1.6 (2009 Kan. Ct. R. Annot. 469).

There is some overlap between the ethical duty of confidentiality and the attorney-client privilege. By definition, all communications protected by the attorney-client privilege will be confidential and covered by the ethical duty. K.S.A. 60-426(a) (communication must have been made in professional confidence). That overlap is the reason why the ethical duty of confidentiality requires an attorney to invoke the attorney-client privilege when it is applicable. Comment [13] to KRPC 1.6 (2009 Kan. Ct. R. Annot. 470). But not all client confidences inevitably must be protected through invocation of attorney-client privilege.

This is, at base, a privilege case. McKinnon invoked the attorney-client privilege to prevent her compelled disclosure of what she believed to be confidential client information. Such compulsion of her testimony was and is governed by K.S.A. 60-426 and any court decisions interpreting, construing, and/or applying it.

This is one such decision. The attorney ethics rules on client confidences provide important context to our analysis of the contours of K.S.A. 60-426 attorney-client privilege when a prosecutor attempts to compel a criminal defense attorney to speak, but they do not control it. As the following subsections of our analysis illustrate, another attorney ethical rule, KRPC 3.8(e) (2009 Kan. Ct. R. Annot. 564), does provide an essential overlay to the privilege statute and K.S.A. 2009 Supp. 60-245(c)(3) on motions to quash in situations of this type. It requires certain procedures and proof when a prosecutor seeks a subpoena directed to criminal defense counsel and when the subject of the subpoena seeks to quash such a subpoena.

*K.S.A. 60-426 Attorney-Client Privilege and KRPC 3.8(e)*

Having addressed the general distinction between privilege law and attorney ethics rules on client confidences, we now turn to the extraordinary nature of the situation in this case and the applicable attorney ethics rule, *i.e.*, a prosecutor's issuance of a subpoena to compel testimony about a former client from a defense lawyer in a criminal proceeding and KRPC 3.8(e). The prosecutor invoked KRPC 3.8(e) to obtain issuance of the subpoena to McKinnon. He did so with good reason. KRPC 3.8(e) speaks directly to the prosecutor's ethical obligation in such a mercifully rare scenario, and it prohibits a prosecutor from subpoenaing a defense lawyer in a

"criminal proceeding to present evidence about a past or present client unless the prosecutor reasonably believes:

(1) the information sought is not protected from disclosure by any applicable privilege;

(2) the evidence sought is essential to the successful completion of an ongoing investigation or prosecution; and

(3) there is no other feasible alternative to obtain the information." 2009 Kan. Ct. R. Annot. at 565.

At least three underlying principles are evident in the language of this rule.

First, the prosecutor's role in our criminal justice system is unique, and it carries concomitant responsibilities. The prosecutor is a representative of the government in an adversary criminal proceeding, which means he or she must be held to a standard not expected of attorneys who represent "ordinary" parties to litigation. *Berger v. United States*, 295 U.S. 78, 88, 79 L. Ed. 1314, 55 S. Ct. 629 (1935). As we stated in *State v. Pabst*, 268 Kan. 501, 996 P.2d 321 (2000):

"A prosecutor is a servant of the law and a representative of the people of Kansas. . . . Sixty-five years ago the United States Supreme Court said that the prosecutor represents

'a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.' *Berger v. United States*, 295 U.S. [at] 88." 268 Kan. at 510.

The comments to KRPC 3.8, Comment [1] (2009 Kan. Ct. R. Annot. 565) make this explicit: "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate."

Second, Rule 3.8(e)(1)'s near-total prohibition on subpoenas directed to an attorney to obtain evidence protected by privilege reinforces the indispensability of attorney-client privilege in the effective and efficient functioning of the administration of justice. The attorney-client privilege is the oldest of the common-law privileges and exists "to encourage full and frank communication between attorneys and their clients" in order to "promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981); see also *State ex rel. Stovall v. Meneley*, 271 Kan. at 373 (privilege fosters candid communication); *Wallace, Saunders, Austin, Brown & Enochs, Chtd. v. Louisburg Grain Co.*, 250 Kan. 54, Syl. ¶ 10, 824 P.2d 933 (1992) (privilege "should not be set aside lightly").

Third, the limitations that KRPC 3.8(e)(2) and (3) place on the power to compel an attorney to provide nonprivileged evidence about a client "to those situations in which there is a genuine need to intrude in the client-lawyer relationship" communicate a general unwillingness to intrude. See Comment [4] to KRPC 3.8 (2009 Kan. Ct. R. Annot. 566). These limitations are based on "the generally accepted principle that the attorney-client relationship should not be disturbed without cause." *United States v. Colorado Supreme Court*, 189 F.3d 1281, 1288 (10th Cir. 1999) (construing Colorado's equivalent to KRPC 3.8[e]). In *Colorado Supreme Court*, the Tenth Circuit explained the bases for the special protections the law affords the attorney-client relationship:

"The importance of the attorney-client relationship is evidenced by the various privileges which protect it. The attorney-client privilege is 'one of the oldest recognized privileges for confidential communication known to the common law' and works to foster the underlying relationship. *Upjohn Co. v. United States*, 449 U.S. . . . [at] 389 . . . ; see also *Swidler & Berlin*, 524 U.S. 399, 141 L. Ed. 2d 379, 118 S. Ct. 2081, 2084 (1998). Similarly, the work product privilege fosters

'the general policy against invading the privacy of an attorney's course of preparation [which] is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade

that privacy to establish adequate reasons to justify production through a sub-poena or court order.'

*Hickman v. Taylor*, 329 U.S. 495, 511, 91 L. Ed. 451, 67 S. Ct. 385 (1947). The legal profession's 'ethical obligation' of confidentiality is a corollary to these priv-ileges. See *Upjohn Co.*, 449 U.S. at 391, 101 S. Ct. 677 (citing ABA code of Professional Responsibility, 4-1)." *United States v. Colorado Supreme Court*, 189 F.3d at 1287.

We also note that discovery limitations imposed on parties seek-ing attorney work product are similar to the need-based limitations of KRPC 3.8(e)(2) and (3). The work product rule, codified at K.S.A. 60-226(b)(4), permits discovery of attorney work product only upon " ' "a showing that the party seeking discovery has a substantial need for the material and cannot without undue hard-ship obtain the substantial equivalent by other means." ' " *Wichita Eagle & Beacon Publishing Co. v. Simmons*, 274 Kan. 194, 218, 50 P.3d 66 (2002) (quoting *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 426, 997 P.2d 681 [2000]).

The work-product limitations are based on policy considerations that are similar to those underlying the attorney-client privilege. " '[W]ork product immunity rests on the idea it is necessary to preserve the independence of the lawyer and thus, indirectly, the adversary system.' [Citation omitted.]" *Wichita Eagle & Beacon Publishing Co.*, 274 Kan. at 218. Specifically, the work product rule is based on

" 'the need for the lawyer handling a case to have full rein to develop his theory and strategy in the case if the adversary system is to work effectively. To perform this role the lawyer needs to be able to work without fear of disclosure, at least in the earlier stages of preparation. And he needs protection from the possibility that he will be cast in the role of a witness and, even worse, of a witness antago-nistic to other witnesses upon whose testimony his client's case may depend.' [Citations omitted.]" 274 Kan. at 218-19.

The requirement that there be a genuine need in order to com-pel an attorney to provide information relating to representation of a client found both in the work-product rule and in KRPC 3.8(e)(2) and (3) also implicitly recognizes the chilling effect such a subpoena can have on the trust that is an essential component of the attorney-client relationship. *United States v. Colorado Supreme*

*Court,* 189 F.3d at 1288 (client's concern over whether attorney will testify against him, withdraw "inevitably" undermines important trust, openness); *United States v. Klubock,* 832 F.2d 649, 653 (1st Cir. 1987) (*Klubock I*), *vacated by* 832 F.2d 664 (1st Cir. 1987) (equally divided *en banc* court) (*Klubock II*) (discussing Massachusetts ethics rule similar to KRPC 3.8[e], noting problems inherent in such subpoenas include driving "a chilling wedge between the attorney/witness and his client," causing client to be "uncertain at best, and suspicious at worst, that his legitimate trust in his attorney may be subject to betrayal"); see also *Whitehouse v. United States Dist. Court for Dist. of Rhode Island,* 53 F.3d 1349, 1358 (1st Cir. 1995) (noting decision in *Klubock I* vacated because court sitting *en banc* equally divided; nevertheless approving *Klubock I* rationale).

The need-based requirements of KRPC 3.8(e)(2) and (3) also implicitly recognize the potential for abuse and harassment that exists when a prosecutor issues a subpoena to *opposing* defense counsel. Potential misuse includes interference with a defendant's Sixth Amendment right to counsel by diverting the attorney's time and resources from the client through creation of a "second front" in the litigation and, ultimately, by forcing counsel's withdrawal or disqualification. See *Klubock I,* 832 F.2d at 653-54; *Whitehouse,* 53 F.3d at 1358.

At the time the district judge considered issuance of the subpoena to McKinnon in this case, we had made no statement that he was obligated to conduct a KRPC 3.8(e) analysis. It has not previously been discussed in interpreting, construing, or applying attorney-client privilege under K.S.A. 60-426. However, the prosecutor's instinct in seeking judicial intervention before seeing that the subpoena was issued and served and in invoking KRPC 3.8(e) in his motion for the subpoena was correct. Likewise, the judge's decision to follow the prosecutor's lead on this point, evaluating the three factors of KRPC 3.8(e) before permitting the subpoena to be issued was correct. The arguments pursued and procedures followed by the prosecutor and judge demonstrate their appreciation for the extraordinary nature of the action sought and the essential quality of the relationship McKinnon believed herself

duty-bound to protect. Weighty interests are at stake when the issuance of such subpoenas is contemplated, and it is appropriate—indeed, we decide today necessary—to proceed with extreme caution.

In view of the role and importance of a trustworthy and confidential attorney-client relationship, particularly in our adversary system of criminal justice, and of the potential for damage to that system if the relationship is too cavalierly invaded or compromised, we hereby adopt the procedure followed here as a requirement. Moreover, we approve KRPC 3.8(e) as the analytical rubric for a district court judge considering a prosecutor's motion for issuance of a subpoena to compel criminal defense counsel to testify about a current or former client's confidential information. A judge may not issue such a subpoena unless the prosecutor files a motion and establishes that (1) the information sought is not protected from disclosure by any applicable privilege; (2) the evidence sought is essential to the successful completion of an ongoing investigation or prosecution; and (3) there is no other feasible alternative to obtain the information.

The first of the factors, the existence of a privilege under K.S.A. 60-426, acts as a threshold consideration, as a privilege generally cannot be overcome by a showing of need. See *Admiral Ins. v. United States Dist. Court for Dist. of Ariz.*, 881 F.2d 1486, 1494-95 (9th Cir. 1989) (privilege takes precedence over need for information); *The St. Luke Hospitals, Inc. v. Kopowski*, 160 S.W.3d 771, 776-77 (Ky. 2005) ("when a communication is protected by the attorney-client privilege it may not be overcome by a showing of need by an opposing party to obtain the information contained in the privileged communication"); compare K.S.A. 2009 Supp. 60-245(c)(3)(A)(iii) (subpoena *shall* be quashed if information sought protected by privilege) and K.S.A. 2009 Supp. 60-245(c)(3)(B)(i) (in considering a motion to quash or modify subpoena for confidential trade secrets or commercial information, if issuing party shows substantial need for the information, court *may* impose protective conditions on attendance/production); see also *Wesley Medical Center v. Clark*, 234 Kan. 13, 20-27, 669 P.2d 209 (1983) (recognizing difference between absolute privilege, qualified privilege;

absolute privilege makes need irrelevant; qualified privilege allows court to control discovery of nonprivileged confidential information based on considerations that include need).

Accordingly, if the evidence the prosecutor seeks is protected from disclosure by the statutory attorney-client privilege, the KRPC 3.8(e) criteria cannot be met and the subpoena cannot issue, regardless of whether the information is essential to the prosecution and there is no other feasible alternative to obtain the information. If, however, the prosecutor establishes that the information is not protected by the privilege, then the last two factors must also be established in order to approve the issuance of the subpoena.

If the subpoena is approved and served, the attorney subject to the subpoena may file a motion to quash. The grounds for quashing the subpoena may include a challenge to the existence of any of the three KRPC 3.8(e) factors, as well as any of the other factors listed in K.S.A. 60-245(c). On such a motion to quash, the initial determinations made on the KRPC 3.8(e) factors in order to issue the subpoena have no preclusive effect, as those determinations were made without the participation of the attorney subject to the subpoena. Thus the State retains the burden of demonstrating the existence of each of the KRPC 3.8(e) factors, with one modification. If the attorney invokes the attorney-client privilege, the attorney has the burden to show the privilege applies. *State ex rel. Stovall v. Meneley*, 271 Kan. at 374 (party asserting attorney-client privilege bears burden of proof to establish all essential elements of it). If, on the other hand, the State contends an exception to the privilege applies, the State has the burden of establishing the existence of the exception. See *Wallace, Saunders, Austin, Brown & Enochs, Chtd. v. Louisburg Grain Co.*, 250 Kan. at 60-61 (party seeking to invoke crime-fraud exception bears burden of making out prima facie case of fraud); see also 9 A.L.R. 6th 363, Crime-Fraud Exception to Attorney-Client Privilege in State Courts: Contemplated Crime (recognizing general rule that party asserting crime-fraud exception bears burden of establishing prima facie case of contemplated fraud).

If the court concludes that the information sought is protected by privilege, the subpoena must be quashed. If the court finds no privilege applies, in order to uphold the subpoena, the court must find both that the evidence is essential to the successful completion of an ongoing investigation or prosecution and that no other feasible alternative exists to obtain the evidence.

The new rule of this case is consistent with our previous rulings affirming that a prosecutor's role is to see that justice is done, not merely to prevail in his or her cause. For this reason, the line between disciplinary rules of conduct and the prosecutor's duty to "refrain from improper methods calculated to produce a wrongful conviction" is not always distinct. *Berger v. United States*, 295 U.S. at 88.

For example, prosecutors have both an ethical duty and a legal duty as part of substantive law to disclose exculpatory evidence to the defense. Compare KRPC 3.8(d) (2009 Kan. Ct. R. Annot. 564) and *Wilkins v. State*, 286 Kan. 971, 989, 190 P.3d 957 (2008) (citing *Brady v. Maryland*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 83 S. Ct. 1194 [1963]) (withholding of exculpatory evidence by prosecution implicates defendant's constitutional rights, considered prosecutorial misconduct).

Similarly, a prosecutor has both an ethical duty and a legal duty as part of substantive law to refrain from offering personal opinions concerning certain matters, including the credibility of a witness and the guilt of the accused. Compare KRPC 3.4(e) (2009 Kan. Ct. R. Annot. 552) and *State v. Pabst*, 268 Kan. at 506, 510 (court relies upon KRPC 3.4[e], American Bar Association Standards for Criminal Justice [3d ed. 1993] to hold prosecutor's comments on witness credibility improper, possibly leading to violation of defendant's right to fair trial). The court's analysis in *Pabst* knitted together the prosecutor's duty as a representative of the State and the duties imposed under ethics rules:

"[A]s we have observed, [a prosecutor's expressing a personal opinion on the credibility of a witness] is expressly forbidden by both the KRPC 3.4 and the ABA Standards for Prosecutors, 3-5.8 Commentary, Personal Belief. Here an assistant attorney general from the office of the attorney general criminal litigation division introduced into the case his personal opinion of Pabst's credibility. He ignored

his special obligation as a prosecutor to avoid improper personal insinuations. Because he represented the State of Kansas the jury might have been misled into thinking his personal opinions were validated by the weight of the State of Kansas. Such prosecutorial vouching places the prestige of the State behind the prosecutor's personal assurances." 268 Kan. at 510-11.

Our decision today also is consistent with the well-established principle that district courts have the authority, independent of a statutory privilege, to prevent or limit the power of compulsory process when necessary to prevent abuse, harassment, undue burden or expense, to manage litigation, to prevent violation of constitutionally protected interests, and to protect confidential matters. Without exception, our statutes and case law recognize the district court's necessary authority to prevent or limit the power to compel disclosure of information in virtually every aspect of the civil and criminal litigation process. Statutes providing this authority include: K.S.A. 60-226(b)(4), limiting discovery of an attorney's nonprivileged work product materials by requiring the party seeking the materials to establish substantial need and inability to obtain the substantial equivalent by other means without undue hardship; K.S.A. 60-226(c), providing power to issue protective orders in the discovery process to protect a party from annoyance, embarrassment, oppression, or undue burden or expense; K.S.A. 60-245(c)(3)(A)(iv), providing broad power to quash subpoena that subjects a person to undue burden); and K.S.A. 60-245(c)(3)(B)(i), providing that a court may quash or modify a subpoena that requires disclosure of trade secret or other confidential research, development, or commercial information, unless a showing of substantial need is made, and that, if substantial need is shown, the court may impose protective conditions on any disclosure. Under case law, subpoenas are not to be unreasonable or oppressive. See *In re Tax Appeal of Collingwood Grain, Inc.*, 257 Kan. 237, 256, 891 P.2d 422 (1995). Subpoenas in aid of civil or criminal litigation are subject to a stringent relevancy requirement. See *State ex rel. Stephan v. Clark*, 243 Kan. 561, 568, 759 P.2d 119 (1988). Inquisition subpoenas under K.S.A. 22-3101 are subject to the district court's inherent power to prevent prosecutorial abuse of the judicial process. See *State ex rel. Cranford v. Bishop*, 230 Kan. 799,

800-01, 640 P.2d 1271 (1982) (judicial inquisition subpoenas under K.S.A. 22-3101[1]); *Southwestern Bell Tel. Co. v. Miller*, 2 Kan. App. 2d 558, 583 P.2d 1042, *rev. denied* 225 Kan. 845 (1978) (prosecutorial inquisition subpoenas under K.S.A. 22-3101[2]). When an inquisition subpoena under K.S.A. 22-3101(1) intrudes on a constitutionally protected privacy interest, the district court's inherent power to prevent abuse of the judicial process requires the court to balance the State's compelling interest in pursuing criminal investigations, the privacy rights invaded, the State's need for access, protective safeguards to prevent unauthorized disclosure, and other public policy considerations. *Alpha Med. Clinic v. Anderson*, 280 Kan. 903, 128 P.3d 364 (2006). A district court considering a motion to quash a grand jury subpoena on grounds that it is overly burdensome or intrudes on privacy interests must balance the grand jury's need for the materials against the burden or intrusion. *Tiller v. Corrigan*, 286 Kan. 30, 182 P.3d 719 (2008).

The new rule of this case requiring a motion and approval of the court before a prosecutor can arrange to issue a subpoena for testimony by criminal defense counsel also is consistent with the American Bar Association's inclusion of such a requirement in the 1990 amendment to Rule 3.8 of the Model Rules of Professional Conduct. See A Legislative History: The Development of the ABA Model Rules of Professional Conduct, 1982-2005, pp. 509-10 (2006). Although the ABA had dropped the judicial approval language in 1995, long before Kansas adopted the current provisions of Rule 3.8(e) in 2007 (2009 Kan. Ct. R. Annot. 564-65), the decision to omit the language was due solely to discomfort with state court enforcement against federal prosecutors, not to any conclusion that the attorney-client relationship was undeserving of careful, advance judicial review of any subpoena that would interfere with it. Indeed, proponents of the deletion believed the preapproval provision was more properly a procedural matter within "the province of the criminal and civil procedural rules, not the ethical rules." A Legislative History: The Development of the ABA Model Rules of Professional Conduct 512.

And, finally, the new rule's requirement that prosecutors and district judges employ the KRPC 3.8(e) factors as an overlay on

the attorney-client privilege analysis when defense counsel is to be subpoenaed to testify about current or former client confidences in a criminal proceeding is demonstrably workable. The KRPC 3.8(e) factors have been a part of the calculus on issuance and enforcement of such subpoenas in federal courts since 1985, when the Department of Justice adopted internal guidelines in response to growing concerns among the bar over federal prosecutors' use of them. See United States Attorneys' Manual, § 9-13.410 (Sept. 1997) (internal supervisory approval mandatory to issue subpoena to attorney for client information, with approval conditioned on Rule 3.8[e] factors); *Stern v. United States Dist. Court for Dist. of Mass.*, 214 F.3d 4, 8-9 (1st Cir. 2000) (tracing history of Model Rule 3.8 subpoena provision, citing *United States v. Perry*, 857 F.2d 1346, 1347-48 [9th Cir. 1988], which cites § 9-2.161[a] of 1985 version of United States Attorneys' Manual).

Judicial preapproval for issuance of a subpoena to an attorney for evidence concerning a present or former client also has been a part of the Virginia rules of criminal procedure since 1987. See Va. Code Ann. Sup. Ct. R. Criminal Practice and Procedure, Rule 3A:12(a) 1987 Supp. In 2000, the Virginia Supreme Court amended its ethical rules, specifically deleting from its version of Rule 3.8 the requirement that a prosecutor obtain judicial approval prior to issuing such a subpoena, but the judicial approval requirement in the criminal procedure code remained. See Va. Code Ann. Sup. Ct. R. 3.8, Committee Commentary (provision requiring judicial approval to subpoena attorney deleted because of "prevailing case law"; local federal district court does not require prior approval).

*Evaluation of This Case Under the KRPC 3.8(e) Rubric*

Now that we have established the legal rules and procedures governing the situation before us, we turn to our evaluation of the district judge's assessment of the evidence before him and his legal rulings based on that assessment. The facts of the information already disclosed by McKinnon are undisputed, as are the facts of the detective's investigation, the wording of the question the prosecution asked, and her refusal to answer.

*First Factor Under KRPC 3.8(e)*

In her brief, McKinnon challenges the district judge's determination on the first KRPC 3.8(e) factor—that the attorney-client privilege did not apply because of the crime-fraud exception. In her view, there was nothing other than the former client's communication itself to demonstrate the client's intention to obtain legal advice to enable or assist in the planned perjury. This, she argues, is inadequate to qualify under K.S.A. 60-426(b)(1), which requires "sufficient evidence, *aside from the communication* . . . to warrant a finding that the legal service was sought or obtained in order *to enable or aid* the commission or planning of a crime." (Emphases added.) If, as a threshold matter, the attorney-client privilege applies, the three KRPC 3.8(e) factors cannot be met.

We have already ruled that the district judge appropriately considered the three factors under KRPC 3.8(e), the controlling law for his evaluation of the State's motion for issuance of the subpoena, and McKinnon's later motion to quash. However, as discussed above, application of even a proper legal standard in arriving at what is acknowledged to be a discretionary decision can still be reversible error if an appellant demonstrates that the district judge's application or decision necessarily depended upon factual findings unsupported by substantial competent evidence. See *Cooter & Gel v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 L. Ed. 2d 359, 110 S. Ct. 2447 (1990).

The judge's determination on the first KRPC 3.8(e) factor necessarily depended on his factual finding that evidence beyond the former client's communication itself existed and that it supported an inference that the former client sought legal advice to further a crime or planned crime. This was error. On the undisputed record as developed so far and before us, there is no such evidence. McKinnon's summary of the former client's expression of an intention to commit perjury in Gonzalez' case is the only evidence, and merely reed-thin circumstantial evidence, that the former client sought legal services from the public defender's office "in order to enable or aid the commission or planning of a crime or a tort." K.S.A. 60-426(b)(1). No other evidence of a desire to advance such

facilitation exists. K.S.A. 60-426(b)(1) requires additional evidence before the crime-fraud exception to attorney-client privilege will arise, given the threat of serious damage to the essential confidential relationship the privilege ordinarily protects. The attorney-client privilege protecting the communications of the former client to McKinnon or her subordinate was and is intact in this case, absent waiver or a contractual agreement not to claim the privilege. See K.S.A. 60-437(a), (b) (privilege may be waived by contract, previous disclosure).

As noted, the State nevertheless argues that McKinnon cannot effectively invoke the privilege because the prosecution merely seeks the client's name or identity, which is not confidential. Although this rule of law may generally be correct, see *In re Grand Jury Subpoenas*, 906 F.2d 1485, 1488 (10th Cir. 1990) (client's identity is not normally protected by the attorney-client privilege); *Bank v. McDowell*, 7 Kan. App. 568, Syl. ¶ 2, 52 Pac. 56 (1898) (client identity not protected by attorney-client privilege), it is not correct in the specific circumstances before us here. McKinnon admits that she had no authorization from the former client to include the substance of the former client's statement in the motion to withdraw and that she did so in violation of the attorney ethics rules governing client confidentiality. See KRPC 1.6(a) (2009 Kan. Ct. R. Annot. 468) (attorney shall not reveal client confidences); *State v. Maxwell*, 10 Kan. App. 2d 62, 64, 691 P.2d 1316 (1984), *rev. denied* 236 Kan. 876 (1985) (attorney's unauthorized disclosure of client confidence not equivalent to client waiver).

In this unusual situation, when the content of the confidential communication has already been revealed without the former client's permission, providing the name or identity of the former client would effectively disclose confidential client information; thus, in this case, the name or identity of the former client must be kept confidential to achieve the purpose of the privilege and the attorney ethics rules that provide its context. See *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003) (limited exception to the general rule that client identity is not privileged applies where "so much of an actual confidential communication has been disclosed already that merely identifying the client will effectively dis-

close that communication"); *Vingelli v. United States, Drug Enforcement Agency,* 992 F.2d 449, 453 (2d Cir. 1993) ("substantial disclosure" exception to general rule that client identity not privileged communication extends privilege to identity "where the substance of a confidential communication has already been revealed, but not its source, [such that] identifying the client constitutes a prejudicial disclosure of a confidential communication").

Because the continuing existence of the attorney-client privilege makes it impossible for the State to meet its burden to establish all of the three KRPC 3.8(e) factors, the contempt judgment and sanctions order must be vacated and this case remanded for further proceedings. Further discussion of the KRPC 3.8(e) factors is technically unnecessary to the inevitable outcome of this appeal. We nevertheless continue our analysis because this opinion enunciates a new rule that may need to be applied on remand for whatever usefulness it may have as the district judge evaluates the evidence already in the record.

*Second Factor Under KRPC 3.8(e)*

McKinnon's brief does not argue this factor—whether the evidence sought is essential to the successful completion of an ongoing investigation or prosecution. Her counsel also made no issue of it at oral argument before us. We thus assume there to be no argument between the parties on this point, as the evidence has been developed so far.

*Third Factor Under KRPC 3.8(e)*

McKinnon's brief also does not argue the third factor under KRPC 3.8(e)—whether the prosecution has another feasible alternative to obtain the information it seeks from her. At oral argument, however, McKinnon's counsel suggested that the State failed to establish this factor, because its investigator could have determined the former client's identity by checking the court files of the seven newly endorsed witnesses to determine the one from whose case the Public Defender's Office withdrew during the first half of 2007. Counsel for the State acknowledged at oral argument that such a review of the witnesses' court files was possible and that he did not know whether it had occurred. The detective's testimony,

the only evidence in the record on the extent and results of the State's investigation after McKinnon's motion to withdraw, makes no mention of such an effort being undertaken.

As with the first factor under KRPC 3.8(e), the issue before us is factual rather than legal. Is there substantial competent evidence in the record as it exists to support the district judge's determination on this factor? The answer is no.

Again, the only evidence as to the third factor was the testimony of Moore, the detective who conducted the fruitless interviews of the seven newly endorsed witnesses. Although Moore said he believed that there were no other possible avenues of investigation, as oral argument to this court demonstrated, it would have taken little time and less imagination to discern other directions and strategies more likely to lead to helpful information. Unless these directions and strategies were attempted and failed, the State did not demonstrate that there were no feasible alternatives other than to coerce McKinnon's testimony. Even if the crime-fraud exception arose to defeat the attorney-client privilege under the first factor of KRPC 3.8(e), the third factor should have prevented issuance of the McKinnon subpoena in the first place or prevented its enforcement on her motion to quash.

The judgment of the district court is reversed and vacated, and the case is remanded to the district court for further proceedings.

DAVIS, C.J., not participating.
LARRY T. SOLOMON, District Judge, assigned.