NOT DESIGNATED FOR PUBLICATION

No. 116,755

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ORION MARK GRAF,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Opinion filed March 16, 2018.
Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Claire Kebodeaux*, legal intern, *Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., GREEN, J., and HEBERT, S.J.

PER CURIAM: Orion Mark Graf was convicted on his plea of no contest to one count of attempted rape and one count of attempted aggravated criminal sodomy. Prior to his sentencing, Graf moved to withdraw his plea. The district court denied the motion and proceeded to sentence Graf to a controlling sentence of 216 months' imprisonment. Graf now appeals from the denial of his motion to withdraw his plea.

We find no abuse of discretion, and we affirm the judgment of the district court that Graf failed to show good cause to withdraw his plea.

1

*Factual and Procedural Background*

On May 27, 2014, Graf was charged with three counts of rape, one count of aggravated assault, and one count of criminal threat. On May 12, 2015, Graf pled no contest to one count of attempted rape and one count of attempted aggravated criminal sodomy, as charged in the third amended information.

At his plea hearing, the district court judge discussed the plea and its implications with Graf. The judge explained the maximum penalties on both counts, and Graf advised he understood those penalties. Graf also confirmed he understood his right to a jury trial, the presumption of innocence, his right to confront those testifying against him, his right to choose whether to testify, his right to appeal if found guilty at trial, his right to appellate counsel, and that by pleading he gave up his rights to appeal his conviction. Graf stated he was satisfied with his attorney's advice and representation, he was not threatened or coerced to enter his plea, and no promises were made to him other than those in plea negotiations. Graf specifically told the court he was not under the influence of drugs or alcohol.

The district judge specifically asked Graf if he was "suffering from any mental disease or defect that would make it difficult" for Graf to understand the proceedings and the implications of his plea, and Graf responded, "I don't think so." The district judge ascertained that Graf had filled out a plea advisory with his attorney who had explained the advisory and answered Graf's questions about the advisory. The district judge found that Graf freely, voluntarily, and intelligently made his no contest plea, and found Graf guilty of one count each of attempted rape and attempted aggravated criminal sodomy.

After the plea, Graf filed a pro se motion for an arrest of judgment and a motion to dismiss counsel. Graf's attorney withdrew and the district court appointed Graf a new

2

attorney. Before sentencing, Graf's new attorney filed a motion to withdraw plea, which is now at issue before this panel.

At the hearing on his motion to withdraw plea, Graf testified he initially felt hesitant about the plea offer, but his attorney strongly encouraged him to accept the plea deal. Graf testified he felt emotionally overwhelmed and incompetent on the day of the plea. He also admitted that he did not tell the district court judge about any of those feelings because he believed that he could not freely talk with the district court judge, even though Graf had previously appeared before the district court judge during various other court appearances, both in this case and in other plea proceedings in another case. Graf claimed he only knew what he was supposed to say in front of the judge from his prior plea hearing. Graf testified he told his prior attorney he did not feel competent to plea before the hearing.

Graf's former attorney, Branden Smith, testified Graf did not tell him that he did not feel competent to plea before the hearing, and at no point did Graf indicate to him that he was not competent. Smith testified that while preparing for trial, Graf sent him handwritten ideas and possible questions for trial and Graf worked with him in preparing motions in his case. Graf and Smith discussed prior plea offers and Graf suggested a counteroffer to one of the offered plea deals. The night before the plea agreement at issue here, Smith gave Graf an eight-page letter explaining the offer and advising him as to why he should accept the offer. Smith went over this letter with him in detail and spent "a couple hours" discussing the plea with him. Smith opined Graf had a very good grasp of the facts, evidence, law, and possible sentence in his case. Graf even repeatedly asked Smith to preserve his right to appeal. Smith testified that Graf said he wanted to go to trial the day of the plea hearing, but Graf changed his mind and decided to accept the deal after all and enter his plea.

Dr. Robert Barnett, a clinical psychologist who evaluated Graf, also testified at the hearing on Graf's motion to withdraw his plea. Barnett testified that Graf's competence to enter the plea was compromised because he felt pressured, agitated, and "emotionally defenseless" at the time of the plea. Graf was previously diagnosed with bipolar disorder and posttraumatic stress disorder. However, Barnett testified that someone diagnosed with bipolar disorder is able to make appropriate life decisions as long as the person is not in a manic or depressed episode. Barnett testified that he had no idea if or what kind of episode Graf may have been in when pleading. Additionally, Barnett agreed that the medications prescribed to Graf generally "improve [one's] decision-making ability," not decrease one's ability. Importantly, Barnett evaluated Graf *four months after* the entrance of Graf's plea, meaning he mostly relied on Graf's self-reporting and "very few records" of his history in coming to his conclusions. Barnett testified that Graf engaged with him appropriately and that he was an "intelligent young man" who, immediately before the criminal charges against him, was a doctoral candidate at the University of Kansas.

During his evaluation, Barnett administered to Graf the Minnesota Multiphasic Personality Inventory-2 (MMPI-2). Barnett testified that Graf had a "very high F score on the validly scales," and a score that high can be indicative of "faking bad," "malingering," or the fabrication of symptoms of mental disorders. However, Barnett opined the MMPI-2 is dated, he had concerns about its clinical utility, and he had no reason to doubt Graf's credibility.

At the conclusion of the hearing, the district judge took a recess to conduct some legal research. She then returned and walked through each of the factors used to assess if there is good cause to withdraw a plea before sentencing, then made several findings. First, the district court judge assessed Graf's competency because, as she stated, it was the crux of his argument that he should be permitted to withdraw his plea. She stated: "[N]ow close to the three years of working with Mr. Graf and his various cases, there is no doubt in my mind that he is competent." She stated that before the plea was accepted,

4

Graf was asking several questions about his plea and negotiated additional terms of the plea agreement, including that no new charges would be filed against him in relation to an alleged battery of an officer he committed while in custody, an assurance that the Federal Bureau of Investigation (FBI) would quit attempting to crack the encryption on his seized hard drive, and his computer would be returned to the State. He also repeatedly indicated that he wanted to preserve his right to appeal the denial of his motion to suppress. Smith, the State, and the district court "got together" in the judge's chambers and did some legal research to see if this was a possibility and determined that through a bench trial or a plea under current caselaw, such an issue would not be preserved. The judge found that such interactions and requests indicated Graf was competent at the time of his plea.

Regarding Barnett's testimony, the district judge made the following credibility determination:

> "I also find it telling that Dr. Barnett gave Mr. Graf the MMPI-2, and my notes indicate that he testified that he had an elevated F score, which is a signal to the greater [*sic*] that the person who is answering the test is faking his answers or malingering, but then he discounted that or discarded that because the MMPI-2 isn't reliable any more. But that just simply doesn't make any sense to me. If it's not reliable, why do you give it? You just wouldn't give it."

She also determined from Barnett's testimony and the rest of the evidence presented at the hearing, "[t]here is no evidence that was presented here before me that Mr. Graf is not capable of and could not fairly and understandingly make a plea that he did fairly and understandingly understand [*sic*] what was being offered and what the ramifications were." Further, the judge pointed out that this was the second time Graf had entered a plea in front of her, and this was the second time that she reviewed all of his rights under the United States Constitution and the rights he would be giving up by entering a plea. She remembered Graf was tearful during his plea, but

5

"that is not a sign of not knowingly and understandingly entering a plea. By entering this plea, he knew he was giving up a huge chunk of his life, that he was giving up his children's childhood as far as being able to participate in that. Just those two things alone would cause, I think anyone, to be tearful, not just somebody who was suffering from some mental incapacity."

She also found that Smith competently represented Graf and he was not misled, coerced, mistreated, or unfairly taken advantage of. She elaborated on the coercion argument that Graf raised—that Graf was coerced because Smith told him he had no chance at trial because of the evidence against him and he was facing a potential 1,200 months' imprisonment if he was convicted as charged. The district court judge stated that she signed the search warrants, presided over the preliminary hearings, ruled on the motions to suppress, and had seen firsthand the evidence that would be admitted at trial against Graf. She stated that the photographic evidence against Graf was "extremely graphic" and the recorded phone call he had with his alleged victim apologizing and asking her not to call the police were "going to be hard to overcome when presenting this case to a jury." She found that this advice was not coercion but it was Smith's advice about the pros and cons of going to a jury trial, and that Smith repeatedly told Graf that this was his choice to make. Finding all of the above, the district court judge denied Graf's motion to withdraw plea.

Ultimately, the district court sentenced Graf to 216 months' imprisonment for the charge of attempted rape and 59 months' imprisonment for attempted aggravated criminal sodomy to run concurrent. Graf was also ordered to 36 months' postrelease supervision and informed of his obligation to register as a sex offender for the duration of his lifetime.

Graf timely appeals the district court's denial of his presentence motion to withdraw his plea.

*The district court did not abuse its discretion by denying Graf's motion to withdraw his plea.*

Graf argues the district court abused its discretion when it denied his presentence motion to withdraw his no contest plea. Specifically, he bases his argument on his assertion that at the time of the plea he was "emotionally defenseless" because of his bipolar disorder and was not competent to plea.

"A plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." K.S.A. 2017 Supp. 22-3210(d)(1). On appeal, the defendant must establish that the trial court abused its discretion in denying a presentence motion to withdraw plea. *State v. Schaal*, 305 Kan. 445, 449, 383 P.3d 1284 (2016). "Discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. Under this standard, an appellate court will not disturb a discretionary decision unless no reasonable person would have taken the view adopted by the district court. [Citations omitted.]" *State v. Gonzalez*, 290 Kan. 747, 755, 234 P.3d 1 (2010).

Three factors, often referred to as the *Edgar* factors, generally guide a district court's consideration of whether a defendant has demonstrated the good cause required by K.S.A. 2017 Supp. 22-3210(d)(1) to withdraw a plea prior to sentencing: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Garcia*, 295 Kan. 53, Syl. ¶ 2, 283 P.3d 165 (2012); see *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). These factors should not be applied mechanically and to the exclusion of other factors. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). These factors establish "'viable benchmarks'" for the district court when exercising its discretion, but the court should not ignore other facts that might exist in a particular case. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016).

7

When the same district court judge presides over both the plea and the motion to withdraw the plea, that judge is in the best position to resolve conflicts in the testimony and credibility issues. *State v. Macias-Medina*, 293 Kan. 833, 839, 268 P.3d 1201 (2012). Further, "[a]ppellate courts do not reweigh the evidence or assess witness credibility. Instead, appellate courts give deference to the trial court's findings of fact." *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011).

*Graf was represented by competent counsel.*

We agree with the district court's holding that Graf was represented by competent counsel. This holding is clearly supported by the record. Smith wrote Graf a very detailed eight-page letter explaining the pros and cons of the plea and spent several hours with him explaining things to him and answering his questions. At the plea hearing, Graf had no complaints about Smith. This factor weighs in favor of a finding that there was not good cause shown for Graf to withdraw his plea.

*Graf was not misled, coerced, mistreated, or unfairly taken advantage of.*

Additionally, the record supports Graf was not misled, coerced, mistreated, or unfairly taken advantage of, as the district court held. Graf is an intelligent individual who was recently a doctoral candidate. Smith clearly explained the plea, its consequences, and the advisory form to Graf. The district judge asked Graf if he understood his right to a jury trial, the presumption of innocence, his right to confront those testifying against him, his right to choose whether to testify, his right to appeal if found guilty at trial, his right to appellate counsel, and that by pleading he gave up his rights to appeal his conviction. Graf indicated he understood. The district court found that Smith's advice was not coercive, Smith advised about the pros and cons of going to a jury trial, and Smith repeatedly told Graf that this was his choice to make. There is no indication in the record that Graf was misled, coerced, mistreated, or unfairly taken

8

advantage of and, thus, this factor weighs in favor of a finding there was not good cause shown for Graf to withdraw his plea.

*Graf's plea was fairly and understandingly made.*

Finally, the record supports the district court's conclusion that Graf was competent at the time of his plea and his plea was fairly and understandingly made. First, Graf entered a plea previously in front of the same judge, so he had experience with this judge, pleas, and the judicial system. Graf clearly understood the nature of the charges against him because he helped with his defense by sending his attorney numerous ideas and even wrote possible questions for trial. He also tried to send a counteroffer to the State, talked about his desire for his attorney to preserve his rights to an appeal, and asked several questions about his plea. Graf even negotiated additional terms of his plea agreement, including that no new charges would be filed against him in relation to an alleged battery of an officer he committed while in custody and an assurance that the FBI would quit attempting to crack the encryption on his seized hard drive and return this hard drive to the State. These actions show that Graf was extremely involved in his own defense and understood what was going on. Additionally, Graf indicated he understood the potential consequences and the rights he was giving up. Graf answered all of the district court judge's questions appropriately.

Although Barnett testified that Graf lacked competence on the day of the plea, Barnett only evaluated him four months after his plea and relied mainly on Graf's self-reporting of his state of mind at the time of the plea. He acknowledged that Graf's personality test showed signs of malingering and his bipolar diagnosis did not necessarily prevent Graf from understanding the proceedings. Additionally, the district court judge stated she did not find Barnett's statements completely credible. Importantly, the same district court judge presided over both the plea and the motion to withdraw the plea, so that judge was in the best position to resolve conflicts in the testimony and credibility

9

issues. See *Macias-Medina*, 293 Kan. at 839; see also *State v. Bailey*, No. 95,378, 2007 WL 570191, at *2 (Kan. App. 2007) (unpublished opinion) ("We are similarly skeptical, as is the State, of the psychiatric testimony on [the defendant's] actual mental condition *at the time of the plea hearing* when the psychiatrist testified that he had not examined [the defendant] for over a month prior to the plea hearing."). As such, this factor weighs in favor of a finding that there was not good cause shown for Graf to withdraw his plea.

All three of these factors weigh in favor of the district court's conclusion that there was not good cause shown to allow Graf to withdraw his plea. The district court did not rely on any error of fact or law, and Graf has failed to show that no reasonable person would have taken the view adopted by the district court. See *Gonzalez*, 290 Kan. at 755.

Affirmed.