**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 1 1999**

**PATRICK FISHER**
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

COLORADO SUPREME COURT,
GRIEVANCE COMMITTEE OF THE
COLORADO SUPREME COURT, and
COLORADO SUPREME COURT
DISCIPLINARY COUNSEL,

Defendants-Appellees,

No. 98-1081

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 93-Z-2672)**

---

Henry L. Solano, United States Attorney; and Kathleen L. Torres and John M.
Haried, Assistant United States Attorneys, Denver, Colorado, on the briefs for
Plaintiff-Appellant.

Gale A. Norton, Attorney General and Maurice G. Knaizer, Deputy Attorney
General, Denver, Colorado, on the brief for Defendants-Appellees.

---

Before **SEYMOUR**, Chief Judge, **PORFILIO** and **KELLY**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

The issue on appeal concerns whether Colorado Rule of Professional Conduct 3.8(f) as adopted by the District Court of Colorado may be enforced against federal prosecutors in Colorado. The rule restricts the prosecutorial practice of subpoenaing an attorney to compel evidence about a past or present client in criminal proceedings. The district court found no Supremacy Clause violation in the rule as modified to eliminate its applicability to grand jury proceedings, and held the modified rule valid and enforceable against federal prosecutors in the investigation and prosecution of federal crimes. We affirm.[1]

## I.

We briefly review the manner in which this case evolved to present the sole question before us today. The case originated from a state rule, Colorado Rule of Professional Conduct 3.8(f), that was adopted into the local rules of the District Court of Colorado. *See* D. COLO. LR 83.6. The rule as originally written restricted prosecutors in criminal and grand jury proceedings from subpoenaing attorneys to give information about a past or present client unless the prosecutor

---

[1]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* FED. R. APP. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

reasonably believed that the information was not protected by a privilege, the evidence sought was essential to an ongoing investigation or prosecution, and there was no feasible alternative to obtain the information. The Rule also required prosecutors to obtain judicial approval before moving forward with a subpoena. The United States Attorney for the District of Colorado brought this action seeking injunctive and declaratory relief against the Colorado Supreme Court and its grievance committee and disciplinary counsel. The district court dismissed the action, holding the United States lacked standing to challenge the application of the Colorado rule to federal prosecutors. On appeal, we reversed and remanded for further proceedings. *See United States v. Colorado Supreme Court*, 87 F.3d 1161 (10th Cir. 1996).

At that time, Colorado Rule of Professional Conduct 3.8(f) included two provisions that have since been removed.[2] The first, subsection (2) of the rule,

---

[2]As originally adopted in Colorado, Rule 3.8 provided:

Rule 3.8: SPECIAL RESPONSIBILITIES OF A PROSECUTOR
The prosecutor in a criminal case shall: . . .
(f) not subpoena a lawyer in a grand jury or other criminal proceeding to present evidence about a past or present client unless:
(1) the prosecutor reasonably believes:
(i) the information sought is not protected from disclosure by any applicable privilege;
(ii) the evidence sought is essential to the successful completion of an ongoing investigation or prosecution;

(continued...)

-3-

required the prosecutor to obtain prior judicial approval of a subpoena directed to a lawyer, after the opportunity for an adversarial hearing. In 1997, following the first appeal in this case, the Colorado Supreme Court amended the rule by deleting subsection (2). The second provision, a portion of Rule 3.8(f)(1), made the rule applicable to subpoenas to lawyers in grand jury proceedings. In its decision on remand, the district court determined that the restriction on grand jury proceedings violated the Supremacy Clause. Defendants have not appealed that determination and we do not address it here.[3] The issue has thus narrowed to whether Rule 3.8 in its modified incarnation, as applicable to federal prosecutors subpoenaing attorneys to divulge information on past and present clients in connection with a criminal proceeding other than a grand jury, is inconsistent

---

[2](...continued)
(iii) There is no other feasible alternative to obtain the information; and
(2) the prosecutor obtains prior judicial approval after an opportunity for an adversarial proceeding.

COLORADO RULES OF PROFESSIONAL CONDUCT 3.8 (1995).

[3]Although circuits are split as to Rule 3.8 with respect to its applicability to grand jury proceedings, that disagreement is inapposite with respect to the revised Rule 3.8 before us. *Compare Whitehouse v. United States Dist. Court*, 53 F.3d 1349 (1st Cir. 1995) (holding federal courts could adopt a rule requiring a federal prosecutor at either the grand jury or trial stage to obtain judicial approval before serving a subpoena on counsel to compel evidence concerning a client) *with Baylson v. Disciplinary Bd.*, 975 F.2d 102 (3d Cir. 1992) (holding federal courts violated Supremacy Clause by adopting a rule regulating federal prosecutors' subpoena practice with respect to grand juries).

with federal law in violation of the Supremacy Clause of United States Constitution, U.S. CONST. art. VI, cl. 2.

While this case was pending appeal, Congress enacted the McDade Act, Pub. L. No. 105-277, 112 Stat. 2681, conclusively establishing that a state rule governing attorney conduct is applicable to federal attorneys practicing in the state. The McDade Act mandates that federal attorneys for the government are to be bound by state professional rules as follows:

> § 530B Ethical standards for attorneys for the Government
> (a) An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State.
> (b) The Attorney General shall make and amend rules of the Department of Justice to assure compliance with this section.

Pub. L. No. 105-277, § 801(a), 112 Stat. 2681-118 (1998) (codified at 28 U.S.C. § 530B). Accordingly, as the parties recognize in their supplemental briefs, the question whether Rule 3.8 violates the Supremacy Clause now turns on whether the rule is a rule of professional ethics clearly covered by the McDade Act, or a substantive or procedural rule that is inconsistent with federal law.

## II.

Because this appeal from a summary judgment disposition presents purely

legal questions, we review the district court's decision de novo. *See Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 627 (10th Cir. 1998).

Black's Law Dictionary defines ethics as, "[o]f or relating to moral action, conduct, motive or character . . . . Professionally right or befitting; conforming to professional standards of conduct." BLACK'S LAW DICTIONARY 553 (6th ed. 1990). Conversely, "*unethical* has come into vogue in U.S. as an adjective for the conduct of the man who is immoral . . . in violating the accepted code of a profession or business." A DICTIONARY OF MODERN ENGLISH USAGE 171 (2d ed. 1965). In the legal profession, unethical conduct can be characterized as "conduct unbecoming a member of the bar," *see* FED. R. APP. P. 46(c) (authorizes disciplinary action for such conduct); CHARLES W. WOLFRAM, MODERN LEGAL ETHICS § 3.3 at 87-88 (1986). The Supreme Court has in turn defined such conduct as "conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice. More specific guidance is provided by case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." *In re Snyder*, 472 U.S. 634, 645 (1985) (reversing suspension of lawyer for refusing to apologize for a "harsh" letter to Court of

Appeals for the Eighth Circuit);[4] *see also Braley v. Campbell*, 832 F.2d 1504, 1510 n.5 (10th Cir. 1987) (en banc).

Despite the somewhat vague and tautological descriptions of legal ethics as normative professional conduct, and professional conduct as legal ethics, and despite being subject to influences as mutable as "the lore of the profession," the legal profession has codified the standards with some success. *See Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 677 (1985) (O'Connor, J., concurring in part, dissenting in part) ("The legal profession has in the past been distinguished and well served by a code of ethics which imposes certain standards

---

[4]As Justice Burger explained for the Court, the need to assure that our members do not display conduct unbecoming a member of the bar is beyond civility, it is a duty. It essentially "reflects the burdens inherent in the attorney's dual obligations to clients and to the system of justice," burdens that come from entrusted powers beyond those given to the public at large. *In re Snyder*, 472 U.S. 634, 644 (1985).

> As an officer of the court, a member of the bar enjoys singular powers that others do not possess; by virtue of admission, members of the bar share a kind of monopoly granted only to lawyers. Admission creates a license not only to advise and counsel clients but to appear in court and try cases; as an officer of the court, a lawyer can cause persons to drop their private affairs and be called as witnesses in court, and for depositions and other pretrial processes that, while subject to the ultimate control of the court, may be conducted outside courtrooms. The license granted by the court requires members of the bar to conduct themselves in a manner compatible with the role of courts in the administration of justice.

*Id.* at 644-45. This duty is imposed on every member of the bar with no distinction between private practice or public service.

beyond those prevailing in the marketplace and by a duty to place professional responsibility above pecuniary gain.").  The Model Rules of Professional Conduct follow in the path of a number of codes and represents the American Bar Association's most recent codification of legal ethical standards.  *See* CHARLES W. WOLFRAM, MODERN LEGAL ETHICS § 2.6.2 at 53-54 (Cannons of Ethics), § 2.6.3 at 56 (Code of Professional Responsibility), § 2.6.4 at 60 (Model Rules of Professional Conduct) (1986); *see generally* MODEL RULES OF PROFESSIONAL CONDUCT (1999).  The federal courts in analyzing conduct unbecoming to a member of the bar turn invariably to the Model Rules or other codes of professional conduct.  *See generally In re Snyder*, 472 U.S. 634.   State courts have adopted similar rules, and federal district courts across the country have in turn adopted the local codes of ethics, applying them to both private and government practitioners.

The question is whether the version of Rule 3.8 before us is one of those normative legal standards that guides the conduct of an attorney.  Although the relevant caselaw offers some guidance, it is slightly amiss in responding to our inquiry because the cases involve other versions of rules that govern grand jury matters and require the prosecutor to obtain judicial approval prior to subpoenaing a lawyer.  *See*, *e.g.*, *Whitehouse*, 53 F.3d 1349; *Baylson*, 975 F.2d 102.  In *Baylson*, for example, three federal prosecutors sued to enjoin the

Disciplinary Board of the Supreme Court of Pennsylvania from requiring them to obtain prior judicial approval before serving a grand jury subpoena on an attorney. The court held a rule similar to the earlier version of Rule 3.8 invalid for two independent reasons. First, it was outside the scope of local rule making authority, an issue resolved in our case due to Congress' enactment of the McDade Act. *See Baylson*, 975 F.2d at 107-08 (discussing rule-making authority).[5] Second, the rule violated the Supremacy Clause by attempting to regulate an area federal law controlled. *Id.* at 112. Dismissing the need to characterize the rule as either procedural or ethical, the court stated, "For purposes of determining whether [the rule] violates the Supremacy clause, it matters not at all what the Board or Baylson choose to call it. What matters is whether the substance of [the rule] actually conflicts or is incompatible with federal law." *Id.* at 111. The rule "does not suddenly become consistent with FED. R. CIM. P. 17 as a state rule of professional conduct." *Id.* The court held that the rule's judicial approval requirement violated the Supremacy Clause because it was incompatible with the federal rules of criminal procedure. *Id.* at 112. Rule 17 regulates subpoena practices such as the time of issuance, clerk issuance including signature and seal, and required names of parties. The court

---

[5]The court in *Baylson* also held that the professional rule as adopted by the federal district courts was not within their supervisory power over grand juries, *Baylson*, 975 F.2d at 109-11, an issue not before us in this appeal.

held that since Rule 17 made no allowances for the court's intervention in the subpoena procedures, such intervention would contravene federal law. *Id.* at 108-12. The court also held the state professional rules imposed an unlawful substantive restraint on the power of the grand jury to issue subpoenas. *Id.* at 109-10.

In *Whitehouse*, the rule at issue also concerned judicial approval and grand jury subpoenas. By contrast to *Baylson*, however, the First Circuit held that the District Court of Rhode Island could properly adopt and enforce Rule 3.8 in its earlier form,[6] on all its terms. The court addressed the issue in two parts. First, it held that the rule was well within the district court rule-making authority since it attempted to regulate only the conduct of the prosecutor herself and not the grand jury procedure or the grand jury's broad independence and secrecy. *See Whitehouse*, 53 F.3d at 1354-62. Second, the court disagreed with *Baylson* and held that Rule 3.8 was not inconsistent with either FED. R. CIM. P. 17 or 57. *Id.* at 1362-65. The court declined to infer affirmative regulation from Congress' silence in the criminal rules. Because "nothing in the text of Rule 17 [suggests] it was intended to abrogate the power of a federal court to regulate the conduct of attorneys appearing before it," the court held Rule 17 did not preclude Rule 3.8's

---

[6]This included application to both grand jury and trial subpoenas and the requirement of prior judicial approval.

regulation of such professional conduct. *Id.* at 1364. Finally, the court disagreed with *Baylson*'s conclusion that a district court's authority under Rule 57 to adopt local rules is limited to "matters of detail," *id.* at 1364-65, concluding there was full authority to adopt the professional rule.

More important to the instant case is the First Circuit's implicit treatment of the rule as one of ethics. The court insisted that the public policy value of Rule 3.8 was to protect the attorney-client relationship, which outweighed any incidental effect on the grand jury. In addressing the policy issues, the court extensively discussed the importance of a trusting and open attorney-client relationship, and the development of a "body of substantive law and ethical rules [that have] evolved over the years" with the purpose of fostering such a relationship. *Id.* at 1361. The court concluded that the district court was in the best position "to evaluate the need for an ethical rule *regulating the practice of its officers*" when imposing on this relationship." *Id.* (emphasis in original).

The importance of the attorney-client relationship is evidenced by the various privileges which protect it. The attorney-client privilege is "one of the oldest recognized privileges for confidential communication known to the common law" and works to foster the underlying relationship. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see also Swidler & Berlin*, 118 S. Ct. 2081, 2084 (1998). Similarly, the work product privilege fosters

the general policy against invading the privacy of an attorney's course of preparation [which] is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order.

*Hickman v. Taylor*, 329 U.S. 495, 511 (1947). The legal profession's "ethical obligation" of confidentiality is a corollary to these privileges. *See Upjohn Co.*, 449 U.S. at 391 (citing ABA code of Profession Responsibility, 4-1).

We look at several factors to help us determine whether a rule really is one of professional conduct. First, a rule of professional conduct would bar conduct recognized by consensus within the profession as inappropriate. As noted by Justice Brennan, at the very least, "an attorney in many instances may properly be punished for 'conduct which all responsible attorneys would recognize as improper for a member of the profession.'" *Zauderer*, 471 U.S. at 666 (Brennan, J., concurring in part, dissenting in part) (quoting *In re Ruffalo*, 390 U.S. 544, 550 (1968) (White, J., concurring)).

Second, a rule of professional conduct is like a commandment dealing with morals and principles. As Judge Campbell in the First Circuit wrote in grappling with a local rule equivalent to an earlier version rule 3.8, a rule of professional conduct often comes in commandment form and becomes suspicious when it "deviate[s] from this 'thou shalt not' structure." *United States v. Klubock*, 832 F.2d 664, 669 (1st Cir. 1987) (en banc) (Campbell, C.J., dissenting).

Moreover, a rule of ethics in directing sweeping commandments of conduct can often be quite vague in its nature,[7] while by contrast the procedural or substantive law, the purposes of which are to direct a cause of action through the courts, cannot afford such vagueness.   In addressing the interplay of due process in a violation of a rule of ethics, Justice Brennan explained that "[g]iven the traditions of the legal profession and an attorney's specialized professional training, there is unquestionably some room for enforcement of standards that might be impermissibly vague in other contexts."   *Zauderer*, 471 U.S. at 666, (Brennan, J., concurring in part, dissenting in part); s*ee also* CHARLES W. WOLFRAM, MODERN LEGAL ETHICS § 3.3-1 at 87 (1986) (discussing imprecision drafted into the codes to assure they are broad enough to cover lawyer misconduct).

Finally, a rule of ethics is directed at the attorney herself.  "The focus of the courts' disciplinary powers is on attorney behavior that is an affront to the express authority of the court, or that shows an unfitness to discharge the

---

[7]"Many people are impatient with moral philosophy because it does not deliver the goods – clear answers that we can act upon with complete confidence. But, unfortunately, moral choice is often inherently dilemmatic and moral philosophy does not deal with realms as contained as those of the physical sciences.  There is no clearly right course to choose, because of either the ambiguity of facts or the ambiguity of our values, no matter how sincerely we attempt to think about them."  *See* Charles W. Wolfram, Modern Legal Ethics, § 2.7.2 at 71 (1986).

attorney's continuing obligations to the court or to clients." *Braley*, 832 F.2d at 1510 n.5 (citing *In re Snyder*, 472 U.S. at 645).[8]  Accordingly, when a rule of professional conduct is violated, members of the profession would agree that the violating attorney ought to be held personally accountable; whereas when a procedural or substantive rule is violated, any negative effect would be directed primarily at the progress of the claim itself.

Applying these factors to Rule 3.8 in the modified form presented to us here, we easily conclude the rule is an ethical one.  Most significantly, the attorney-client relationship is by general consensus of our profession worthy of protection, and the service of "an attorney-subpoena may cause irreparable damage to the attorney-client relationship."  *Whitehouse*, 53 F.3d at 1258.  Such a subpoena takes its toll in two ways.  First, "[f]rom the moment that the subpoena is served on counsel until the issue of its validity is resolved, the client resides in

---

[8]"Courts discipline lawyers to incapacitate the offending lawyer, to deter that and all other lawyers from repeated violations of professional regulations, and to protect the image of the bar.  The classic statement of the purposes of judicial discipline of lawyers is that of Lord Mansfield in *Ex Parte Brounsall*:

> '[T]he question is, Whether, after the conduct of this man, it is proper that he should continue a member of a profession which should stand free from all suspicion . . . .  It is not by way of punishment; but the court on such cases, exercise their discretion, whether a man whom they have formerly admitted, is a proper person to be continued on the roll or not.'

*See* Charles W. Wolfram, Modern Legal Ethics § 3.1 at 80 (1986).

a state of suspended animation, not knowing whether his attorney will testify against and perhaps be required to withdraw his representation." *Id.* That uncertainty inevitably undermines the trust and openness so important to the attorney-client relationship. Second, the "service of a subpoena opens a second front which counsel must defend with her time and resources, thus diverting both from the client." *Id.* We agree with the First Circuit, "[t]hat the defense counsel *adversary* can bring about these consequences raises manifest *ethical* concerns." *Id.* (second emphasis added).

Moreover, Rule 3.8 is in commandment form. The rule has the vague sweeping character of moral edict, stating that the prosecutor in a criminal case shall not subpoena a lawyer in a criminal proceeding to present evidence about a past or present client unless the prosecutor reasonably believes the information sought is not protected from disclosure by any applicable privilege; the evidence sought is essential to the successful completion of an ongoing investigation or prosecution; and there is no other feasible alternative to obtain the information. Embodying the well-honored principle of professional conduct that thou shalt not interfere with the attorney-client relationship without a showing of cause, the text does not concern itself with the actual procedural steps to satisfy the rule.

Finally, the rule is clearly directed at the prosecutor, not at the cause of action. The rule attempts to regulate her behavior when seeking evidence in this

-15-

privileged area of law, with the consequences of personal sanction. In sum, a prosecutor violating Rule 3.8 has violated the generally accepted principle that the attorney-client relationship should not be disturbed without cause. To do so would constitute essentially "unethical" attorney conduct unbecoming any member of the bar, including prosecutors. Because of the characteristics of Rule 3.8, we conclude that the rule in its current incarnation is a rule of ethics applicable to federal prosecutors by the McDade Act.

Furthermore, we hold that Rule 3.8, in its mandate that a federal prosecutor ought not to disturb an attorney-client relationship without a showing of cause, does not conflict with FED. R. CIM. P. 17, which details only the procedures for issuing a proper subpoena. Rule 17 does not abrogate the power of courts to hold an attorney to the broad normative principles of attorney self-conduct. Accordingly, we hold that Rule 3.8 is not inconsistent with federal law and can be adopted and enforced by the state defendants against federal prosecutors.

We **AFFIRM** the judgment of the district court.