TYMKOVICH, Chief Judge,
concurring in part and dissenting in part.
The United States claims it is immunized from following New Mexico’s Rule of Professional Conduct 16-308(E),[1] which es *1303 tablishes professional guidelines for prosecutors issuing subpoenas to third-party-lawyers in criminal cases. The majority agrees, and finds that to apply the rule to federal prosecutors would violate the Constitution’s Supremacy Clause because New Mexico’s rule conflicts with federal law governing grand-jury practice and procedure.
But this Supremacy Clause challenge must fail if Congress has authorized the application of this rule — and it has. In 1998, Congress enacted the McDade Amendment, 28 U.S.C. § 530B,[2] instructing federal prosecutors that they “shall be subject” to state rules of ethics “governing attorneys in each State where [they] engage in [their] duties, to the same extent and in the same manner as other attorneys in that State.” And in United States v. Colorado Supreme Court (Colorado Supreme Court II), 189 F.3d 1281, 1284 (10th Cir. 1999), we established a method for determining whether a state rule falls within the scope of the McDade Amendment and held that a Colorado rule (identical to New Mexico’s rule), requiring compliance with state, trial subpoena rules, applied to federal prosecutors. That should end the matter.
The majority, however, holds Rule 16-308(E) does not apply to federal proseeu-tors because it unduly burdens federal interests when applied in the grand jury context: Thus, despite categorizing the rule as one governing “ethics,” which Congress clearly intended to apply to federal prosecutors, the majority reads Colorado Supreme Court II to also require a conflict preemption analysis. Applying the obstacle-conflict preemption doctrine, the majority holds New Mexico’s rule is preempted in the grand jury- context because it places more onerous conditions on federal prosecutors issuing subpoenas than required by the Supreme Court in United States v. R. Enterprises, Inc., 498 U.S. 292, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991). The majority grounds its preemption analysis not in any congressional mandate— because, indeed, Congress expressly stated federal prosecutors “shall be subject” to state ethics rules — but in the Constitution’s text by way of the Fifth Amendment’s Grand Jury Clause. But New Mexico’s rule is not inconsistent with the Grand Jury Clause’s guarantee that “[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless in a presentment or indictment of a Grand Jury.” Instead, the rule merely instructs prosecutors practicing in New Mexico (federal or state alike) of their professional duty when *1304 issuing subpoenas to third-party lawyers in criminal cases.
As I see it, the first and only question we must answer is: whether the rule is one governing ethics? If it is, considering its burden on federal interests is unnecessary because Congress has authorized the rule’s application to federal prosecutors. And because Colorado Supreme Court 11 classified an identical rule as an ethics rule, the answer is straightfoward. Since the majority’s holding departs from Congress’s clear intent to apply all state ethics rules to federal prosecutors, I respectfully dissent.[3]
I. Discussion

A. The McDade Amendment

I begin with the statutory background on which we all agree. No one disputes that “state regulation” of “federal ... activities” can be authorized by a “clear congressional mandate” making that “authorization of state regulation clear and unambiguous.” Hancock v. Train, 426 U.S. 167, 179, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976). The United States, of course, acknowledges there is no Supremacy Clause problem if federal law unambiguously authorizes the application of the state rules at issue here. See Second Br. at 38 (“[I]f Congress . has, through the McDade Act, clearly and unambiguously authorized the application to federal prosecutors of [the rule], New Mexico has not violated the Supremacy Clause.”). And the Amendment’s text is clear: “An attorney for the Government shall be subject to State laws and rules ... governing attorneys in each State where such attorney engages in that attorney’s duties, to the same extent and in the same manner as other attorneys in that State.” § 530B(a); Colo. Supreme Court II, 189 F.3d at 1284 (noting state laws and rules contemplated by the Amendment are “state professional rules” or “rule[s] of professional ethics”).
Indisputably, then, if a state rule is an ethics rule, the McDade Amendment clearly and unambiguously authorizes its application to federal prosecutors. No one doubts this is an ethics rule in at least one context. In Colorado Supreme Court II, we created a test for determining whether a rule is an ethics rule and applied the test to hold an identical rule as ethical in all non-grand-jury criminal proceedings.[4] 189 F.3d at 1284, 1288. The question in that case was whether a Colorado rule identical to New Mexico’s violated the Supremacy Clause as applied in “criminal proceedings other than a grand jury.” Id. at 1284. As the majority notes, that question turned on • whether the rule was “ ‘a rule of professional ethics clearly covered by the McDade Act, or a substantive or procedural rule that is inconsistent with federal law.’” Majority Op. 1268, 1293 (quoting Colo. Supreme Court II, 189 F.3d at 1284).
We first noted the definition of “ethical”: “ ‘[o]f or relating to moral action, conduct, motive or character.... Professionally right or befitting; conforming to profes *1305 sional standards of conduct.’ ” Colo. Supreme Court II, 189 F.3d at 1284 (quoting Black’s Law Dictionary 553 (6th ed. 1990)); see also id. at 1285 (quoting In re Snyder, 472 U.S. 634, 645, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985)) (noting the Supreme Court’s definition of unethical conduct as “conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice”). In short, the question was whether Colorado’s rule was “one of those normative legal standards that guides the conduct of an attorney.” Id.
To answer that question, we outlined a three-prong test.[5] “First,” an ethical rule bars “conduct recognized by consensus within the profession as inappropriate.” Id. at 1287. “Second,” such rules are like “commandment[s] dealing with morals and principles” and in “directing sweeping commandments of conduct” can be “quite vague” in nature, in contrast to procedural or substantive law, “the purposes of which are to direct a cause of action through the courts.” Id. “Finally,” such rules are “directed at the attorney herself.” Id. “Applying [those] factors” to Colorado’s rule, we “easily conelud[ed] the rule [was] an ethical one.” Id. at 1288.
But the majority relies on a brief aside at the end of the opinion, made after we applied our test and concluded the rule was an ethics rule, that Colorado’s rule also “does not conflict with” a particular federal rule of criminal procedure and, “[a]ecordingly, ... is not inconsistent with federal law.” Id at 1288-89. That statement, however, is merely an affirmation of the truism that it is not inconsistent with federal law to apply state ethics rules as federal law instructs.
A natural reading of the opinion and a reasonable understanding of the word “ethical” supports that position. We plainly thought what mattered was the meaning of the word ethical, and every factor we announced goes to the essence of that word. The Amendment speaks of “Ethical standards,” § 530B, and we generally interpret words in a statute “as taking their ordinary, contemporary, common meaning.” Bilski v. Kappos, 561 U.S. 593, 603, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010). And a rule governing ethics, by our own definition, is neither a substantive nor procedural rule. Thus, the McDade Amendment suffices to ensure that rules of truly ethical concern fit unobtrusively into the federal scheme, because it explicitly deems such rules applicable to federal prosecutors.
And I cannot see how New Mexico’s rule is any less a “normative legal standard[ ]” guiding “the conduct of an attorney,” Colo. Supreme Court II, 189 F.3d at 1285, than the identical rule we considered in Colorado Supreme Court II because it might affect federal prosecutors in grand-jury practice. It, no less, “bar[s] conduct recognized by consensus within the profession as inappropriate.” Id. at 1287. It deals with the same “morals and principles” as that rule, and, like that rule, it is “directed at the attorney herself.” Id. Because we are bound by Colorado Supreme Court II, there is no Supremacy Clause violation here.[6]
*1306 The foregoing analysis of the McDade Amendment’s plain language and our decision in Colorado Supreme Court II demonstrates the infirmity of the Supremacy Clause argument. But understanding the problem Congress wished to fix by passing the McDade Amendment operates to underscore the inapplicability of an additional independent preemption analysis.
In 1989, the Department of Justice issued the “Thornburgh Memorandum,” which concluded that “although the states have the authority to regulate the ethical conduct of attorneys admitted to practice” in their courts, federal prosecutors may only be regulated in that manner “if the regulation does not conflict with the federal law or with the attorneys’ federal responsibilities.” Bruce A. Green, Whose Rules of Professional Conduct Should Govern Lawyers in Federal Court and How Should the Rules Be Created?, 64 Geo. Wash. L. Rev. 460, 471 (1996) (quoting Memorandum from Dick Thornburgh, Attorney General, U.S. Department of Justice, to All Justice Department Litigators (June 8, 1989)). The DOJ intended to insulate federal prosecutors in at least some circumstances from compliance with state ethics rules modeled upon ABA Model Rule 4.2, which prohibited ex-parte attorney contacts with a represented party. N.Y. State Bar Ass’n v. FTC, 276 F.Supp.2d 110, 132 (D.D.C. 2003).
The memorandum received substantial criticism. See id.; In re Doe, 801 F.Supp. 478, 487 (D.N.M. 1992); see also United States v. Tapp, No. CR107-108, 2008 WL 2371422, at *6 (S.D. Ga. June 4, 2008) (noting criticism from “the ABA, the state bar associations, the Judicial Conference of the United States, the Conference of State Chief Justices, [and] the Federal Bar As-, sociation”). Nevertheless, in 1994, the DOJ promulgated a regulation dubbed the Reno Regulation, which essentially codified the Thornburgh Memorandum. See N.Y. State Bar Ass’n, 276 F.Supp.2d at 132; see also John H. Lim, The Side Effects of a Legal Ethics Panacea: Revealing a United States’s Standing Committee’s Proposal to “Standardize” Ethics Rules in the Federal Courts as an Attempt to Undermine the No-Contact Rule, 13 Geo. J. Legal Ethics 547, 568 (2000) (“[T]he Reno [Regulation was] a virtual reprise of the Thornburgh Memo.”).
The Eighth Circuit invalidated portions of the Reno Regulation as beyond the DOJ’s statutory authority, see United States ex rel. O’Keefe v. McDonnell Douglas Corp., 132 F.3d 1252, 1257 (8th Cir. 1998), and criticism of the DOJ’s attempt to insulate itself from state rules of professional responsibility persisted. Litigation continued on the subject. See, e.g., Colo. Supreme Court I, 87 F.3d at 1163 (noting challenge by the United States in 1996 to application of certain Colorado ethics rules to federal prosecutors); Stern v. U.S. Dist. Court for Dist. of Mass., 214 F.3d 4, 9 (1st Cir. 2000) (noting same type of challenge to application of Massachusetts ethics rules to federal prosecutors).
Thus, in 1998, it was unclear whether or to what extent the DOJ could exempt its attorneys from complying with a given state’s rules. Note, Federal Prosecutors, State Ethics Regulations, and the McDade Amendment, 113 Harv. L. Rev. 2080, 2088 (2000) (“By 1998, the war over ethics regulations had reached a stalemate.”). Congress clarified that uncertainty with the McDade Amendment. See N.Y. State Bar Ass’n, 276 F.Supp.2d at 133 (“[I]n the face of the Justice Department’s repeated attempts to exclude its attorneys from compliance with' state bar rules, Congress adopted the [McDade Amendment] .... ”). *1307 The method Congress chose lacked any of the exemption-granting language present in the controversial Thornburgh Memorandum and Reno Regulation. And we should not take Congress’s failure to include those exemptions as reason to read those exemptions into the plain meaning of a word— ethical — that does not naturally encompass them. The simpler reading is that Congress was aware of the debate and came down on the side of a blanket authorization of any rule deemed to govern attorney ethics.[7] See Federal Prosecutors, State Ethics Regulations, and the McDade Amendment, supra, at 2088 (“[U]nlike pri- or DOJ guidelines, [the McDade Amendment] affords no exceptions for federal prosecutors when state ethics rules impinge on federal law enforcement interests.”). That is the reading we adopted in Colorado Supreme Court II.[8]
Of course, Congress did not intend to allow states to regulate government attorneys in a manner inconsistent with federal law. But after the McDade Amendment, regulation of federal prosecutors via rules that are truly ethical in nature is expressly authorized by, and therefore consistent with, the dictates of federal law. It would be perverse to say states act in a manner inconsistent with federal law when they act as federal law instructs. Whether the Amendment’s authorization of such regulation in these circumstances is a wise policy choice is not a question this court can or should answer.

B. Grand-Jury Practice and Procedure as Preemptive

In proceeding with its preemption analysis, the majority rests its preemption finding on the role grand-jury practice and procedure plays in the federal legal system — particularly, that New Mexico’s rule imposes more onerous conditions on federal prosecutors issuing subpoenas to third-party lawyers in a grand jury context than required by the Supreme Court in United States v. R. Enterprises, Inc., 498 U.S. 292, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991). Majority Op. 1296-1301. So to adhere to the Supremacy Clause’s dictate that only three named sources of federal law enjoy supremacy (“This Constitution,” “the Laws of the United States,” and “all Treaties,” Const, art. VI, cl. 2) the majority reasons *1308 the grand-jury subpoena standard must be traced to the constitutional significance of grand juries as recognized in the Fifth Amendment’s Grand Jury Clause.[9]
As an initial matter, I note the peculiar circumstances that this case presents. Our conflict preemption analysis requires us to compare a state statute to its federal counterpart and evaluate whether (1) “compliance with both federal and state regulations is a physical impossibility,” or (2) “the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.” Arizona v. United States, — U.S. -, 132 S.Ct. 2492, 2501, 183 L.Ed.2d 351 (2012) (emphasis added) (citations and internal quotation marks omitted). But as the majority presents it here, we are deciding whether New Mexico’s rule — which, as a rule of ethics, Congress has authorized its application by enacting the McDade Amendment — stands as an obstacle to the accomplishment and execution of the federal grand-jury subpoena standard as announced by judicial decision. Majority Op. 1298-99 (discussing grand-jury subpoena standard announced in R. Enterprises). Thus, the federal interest here is one of judicial making, and Congress has seen fit to expressly authorize the conflict.
The majority relies heavily on the Grand Jury Clause to ground its preemption analysis in some constitutional text. Although there was no mention of grand juries in the original Constitution, the Fifth Amendment reads, “No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury.” This guarantee “confer[s] a right not to be tried (in the pertinent sense) when there is no grand jury indictment.” Midland Asphalt Corp. v. United States, 489 U.S. 794, 802, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989); see also Ex parte Wilson, 114 U.S. 417, 426, 5 S.Ct. 935, 29 L.Ed. 89 (1885) (“The purpose of the [Grand Jury Clause] was to limit the powers of the legislature, as well as of the prosecuting officers, of the United States.... [T]he constitution protects] every one from being prosecuted, without the intervention of a grand jury, for any crime which is subject by law to an infamous punishment.”). The Supreme Court, however, has limited the Grand Jury Clause’s reach by, for one, not compelling its application to the states through the Due Process Clause. See generally Hurtado v. California, 110 U.S. 516, 4 S.Ct. 292, 28 L.Ed. 232 (1884); see also Jerold H. Israel, Free-Standing Due Process and Criminal Procedure: The Supreme Court’s Search for Interpretive Guidelines, 45 St. Louis U. L.J. 303, 385 (2001) (“Of the specific guarantees aimed at the criminal justice process, only the Fifth Amendment requirement of prosecution by indictment or presentment quite clearly will not be incorporated [into the Fourteenth Amendment’s due process guarantees].”).
The majority’s conclusion that the standard adopted in R. Enterprises is mandated by the Grand Jury Clause (thus, taking on constitutional supremacy) reads too much into the Supreme Court’s decision. The Court clearly defined its task: “[T]he focus of our inquiry is the limit imposed on a grand jury by Federal Rule of Criminal Procedure 17(c).” R. Enters., 498 U.S. at 299, 111 S.Ct. 722 (“ ‘[Rule 17(c) ] provides *1309 that the court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive.’ ”). Because “reasonableness] depends on the context,” id. “[t]o the extent that Rule 17(c) imposes some reasonableness limitation on grand jury subpoenas ... [the Court’s] task is to define it.” Id. at 300, 111 S.Ct. 722. The Court then rejected the Nixon standard, applying to trial subpoenas, and adopted the following standard: “[W]here ... a subpoena is challenged on relevancy grounds, the motion to quash must be denied unless the district court determines that there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury’s investigation.” Id. at 301, 111 S.Ct. 722. That this standard is of constitutional significance — as opposed to federal grand juries generally — goes too far.[10]
Having concluded the invocation of the Grand Jury Clause is illusory, I return to the majority’s preemption finding. Although the Supreme Court has approved of the doctrine of obstacle preemption (or frustration-of-purpose preemption), see Crosby v. Nat’l Foreign Trade Council, 530 U.S. 363, 373, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000), the doctrine has been heavily criticized, see generally Caleb Nelson, Preemption, 86 Va. L. Rev. 225 (2000), and the Court has been sensitive to its over application. The Court has directed that in obstacle preemption cases, “There is no federal pre-emption in vacuo, without a constitutional text or a federal statute to assert it.” Puerto Rico Dep’t of Consumer Affairs v. Isla Petroleum Corp., 485 U.S. 495, 503, 108 S.Ct. 1350, 99 L.Ed.2d 582 (1988).[11]
Notwithstanding the Court’s sensitivity and criticism to the doctrine, see also Sprietsma v. Mercury Marine, 537 U.S. 51, 123, 123 S.Ct. 518, 154 L.Ed.2d 466 (2002), the Court has continued to apply it to invalidate state laws that stand as obstacles to the purpose of a particular federal statutory scheme, see Richard H. Fal-lon, Jr. et al., Hart and Wechsler’s The Federal Courts and The Federal System 648 (6th ed. 2009) (citing Daniel J. Meltzer, *1310 The Supreme Court’s Judicial Passivity, 2002 Sup. Ct. Rev. 343 (2002)). Thus, in such cases, the Court generally departs from traditional canons of statutory interpretation . by looking past the plain language of the statute and focusing on legislative intent to divine the full purpose and objectives of Congress.. See Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A., 519 U.S. 316, 335-36, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (Scalia, J., concurring); Geier v. Am. Honda Motor Co., 529 U.S. 861, 868, 870, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000) (quoting United States v. Locke, 529 U.S. 89, 106, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000)). But still, the purposes and objectives are those of Congress, not the courts. Cf. Atherton v. FDIC, 519 U.S. 213, 218, 117 S.Ct. 666, 136 L.Ed.2d 656 (1997) (“ ‘Whether latent federal power should be exercised to displace state law is primarily a decision for Congress,’ not thé federal courts.” (quoting Wallis v. Pan Am. Petroleum Corp., 384 U.S. 63, 68, 86 S.Ct. 1301, 16 L.Ed.2d 369 (1966))).
With that, I fully recognize the grand jury’s special position. See, e.g., R. Enters., 498 U.S. at 297, 111 S.Ct. 722 (noting grand jury’s “unique role in our criminal justice system”). But the grand jury’s unique role does not mean federal grand juries are immune from congressional regulation absent some constitutional directive stating otherwise. Majority Op. 1299 (citing In re Grand Jury, 111 F.3d 1066, 1073 (3d Cir. 1997) (“Just as grand juries must operate within the confines of the Constitution, so too must they comply with the limitations imposed on them by Congress (as long as those limitations are not unconstitutional).”)). Regulation of grand juries via a federal statute, of course, is precisely that. The majority does not hold that Congress lacks the power to say federal prosecutors in the grand jury context are bound by standards mirroring New Mexico’s. That it did so more indirectly — but still expressly, by a general reference to ethics rules — makes no difference. In short, the question of whether the McDade Amendment authorizes a rule’s application as ethical in no way depends on whether that rule’s application to federal prosecutors may have the effect of changing their conduct. To the contrary, Colorado Supreme Court II and the statute’s plain meaning make clear that any obstacle created by state law here exists pursuant to Congress’s express intent.[12]
II. Conclusion
In sum, without some indication that Rule 16-308(E) stands as an obstacle to the accomplishment and execution of Congress’s purposes and objectives, I respectfully dissent from the majority’s determination that the rule conflicts with federal interests and is thus preempted.

. Rule 16-308(E) provides,
The prosecutor in a criminal case shall: ...
*1303 E. not subpoena a lawyer in a grand jury or other criminal proceeding to present evidence about a past or present client unless the prosecutor reasonable believes:
(a) the information sought is not protected from disclosure by an applicable privilege;
(b) the evidence sought is essential to the successful completion of an ongoing investigation or prosecution;
(c) there is no other feasible alternative to obtain the information ....

. In full, the Amendment reads,
§ 53 0B. Ethical standards for attorneys for the Government
(a) An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State.
(b) The Attorney General shall make and amend rules of the Department of Justice to assure compliance with this section.
(c) As used in this section, the term "attorney for the Government” includes any attorney described in section 77.2(a) of part 77 of title 28 of the Code of Federal Regulations and also includes any independent counsel, or employee of such a counsel, appointed under chapter 40.

. I concur with the majority's conclusions on standing and ripeness. My analysis is the same no matter whether we look at the challenge facially or as-applied.

. Colorado Supreme Court II was the second time we had addressed the United States’s Supremacy Clause challenge to this Colorado rule. We previously reversed and remanded the district court's dismissal for lack of standing when we first considered that case. See United States v. Colo. Supreme Court (Colorado Supreme Court I), 87 F.3d 1161, 1166-67 (10th Cir. 1996). When we addressed the rule in Colorado Supreme Court I, it contained a requirement precluding the issuance of a third-party subpoena unless the attorney "obtain[ed] prior judicial approval after the opportunity for an adversarial proceeding.” Id. at 1163. By the time of Colorado Supreme Court II, that requirement had been removed, leaving us with a rule governing third-party subpoenas indistinguishable from New Mexico’s. See Colo. Supreme Court II, 189 F.3d at 1284.

. Notably, this means a rule is not applicable to federal prosecutors just because a state enacts rules of professional responsibility; the state rule must still pass our three-prong test. In other words, the McDade Amendment does not give states carte blanche to regulate federal prosecutors under the guise of ethical regulation.

. The United States also challenges the application of New Mexico's rule outside the grand jury context. But as the majority explains, this challenge “is primarily form, not substance.” Majority Op. 1271. I agree with the majority that our review is confined by our prior conclusions in Colorado Supreme Court II, Majority Op. 1295, absent direction from the Supreme Court or the en banc panel. I also note *1306 the Supreme Court has not had the opportunity to construe whether our delineation between rules that are ethical and those that are substantive or procedural is a correct one.

. It is unsurprising that Congress chose such a broadly sweeping method in light of the long tradition of states "exercis[ing] extensive control over the professional conduct of attorneys.” Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 434, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (noting “special importance” of the “State’s interest in the professional conduct of attorneys involved in the administration of criminal justice”); Fla. Bar v. Went For It, Inc., 515 U.S. 618, 635, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995) (noting "the standards and conduct of state-licensed lawyers have traditionally been subject to extensive regulation by the States”).

. See Colo. Supreme Court II, 189 F.3d at 1284 (outlining the operative question as "whether Rule 3.8 violates the Supremacy Clause now turns on whether the rule is a rule of professional ethics clearly covered by the McDade Act, or a substantive or procedural rule that is inconsistent with federal law" (emphasis added)). Other commentators agree. Sara S. Beale, et al., Grand Jury Law & Prac. § 6:24 (2d ed.) (“[T]he question whether Rule 3.8(e) may be applied to federal prosecutors may turn on whether it is treated as a procedural rule or an ethical rule.... The Tenth Circuit held that the modified version of Rule 3.8(e) adopted in Colorado is an ethical rule rather than a procedural rule and therefore was applicable to federal prosecutors under the McDade Act.” (emphasis added) (footnotes omitted)); 2 Charles Alan Wright, et al., Fed. Prac. & Proc. Crim. § 276 (4th ed.) (citing Colorado Supreme Court II, 189 F.3d at 1288 and stating “if such local rule is characterized as an ethics provision rather than a substantive or procedural rule, it may by imposed upon federal prosecutors consistent with the Supremacy Clause.” (emphasis added)).

. The majority also concludes New Mexico's rule stands as an obstacle to the important investigative function of grand juries. But New Mexico’s rule (as a rule of ethics) is not directed at the grand jury as an institution. It is directed only at prosecutors. Simply because the prevailing practice is for prosecutors to issue subpoenas on behalf of grand juries, Sara S. Beale, et al., Grand Jury Law & Prac. § 6:2 (2d ed.), is insufficient to conclude the rule violates the Supremacy Clause as being inconsistent with the protections of the Grand Jury Clause.

. And it is generally understood that Congress controls the Supreme Court's rulemak-ing authority to promulgate rules of federal criminal procedure. See 28 U.S.C. § 2072(a). Indeed, Congress has regulated grand-jury practice and procedure through amendments to the federal rules. From 2001 to 2004, Congress expanded the disclosure provisions in Rule 6(e) three times. See USA PATRIOT Act, Pub. L. No. 107-56, 115 Stat. 272, 279-80 (2001); Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2256-57 (2002); Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, 118 Stat. 3638, 3760 (2004). Of course, this discussion only has significance if New Mexico's rule is deemed to be "procedural'' in form — that is, it is a rule of procedure infringing upon the federal rules. But, as the majority concedes, that is not the case here. Following Colorado Supreme Court ITs framework, New Mexico's rule is clearly one governing ethics.

. Justice Thomas, in no less than four recent opinions, has questioned the constitutional lineage of the doctrine. See Wyeth v. Levine, 555 U.S. 555, 604, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009) (Thomas, J., concurring in judgment); Arizona, 132 S.Ct. at 2524 (Thomas, J., concurring in part and dissenting in part); Williamson v. Mazda Motor of Am., 562 U.S. 323, 340, 131 S.Ct. 1131, 179 L.Ed.2d 75 (2011) (Thomas, J., concurring in judgment); Haywood v. Drown, 556 U.S. 729 767, 129 S.Ct. 2108, 173 L.Ed.2d 920 (2009) (Thomas, J., dissenting). In Justice Thomas's words, obstacle preemption "is inconsistent with the Constitution because it invites courts to engage in freewheeling speculation about congressional purpose that roams well beyond statutory text.... Under the Supremacy Clause, pre-emptive effect is to be given to congressionally enacted laws, not to judicially divined legislative purposes.” Arizona, 132 S.Ct. at 2524 (citation omitted).

. I note that one judge has concluded in a separate opinion that an Illinois rule identical to the one here would apply to federal prosecutors by virtue of the McDade Amendment, citing Colorado Supreme Court II for support. See United States v. Williams, 698 F.3d 374, 391-92 (7th Cir. 2012) (Hamilton, J., concurring in part and dissenting in part). See also United States ex rel. U.S. Attorneys for the E. & W. Dists. of Ky. v. Ky. Bar Ass’n, 439 S.W.3d 136, 146 (Ky. 2014) ("In our view, E-435 survives scrutiny under [the McDade Amendment] and the Supremacy Clause because it is simply an ethical rule and does not affect federal substantive, procedural, or evidentiary law.” (footnote omitted)).