NOT DESIGNATED FOR PUBLICATION

Nos. 126,347
126,359

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF DODGE CITY,
*Appellee*,

v.

RYAN CHARLES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ford District Court; LAURA H. LEWIS and SIDNEY R. THOMAS, judges. Submitted without oral argument. Opinion filed March 14, 2025. Reversed and remanded with directions.

*Terry J. Malone,* of Williams-Malone, P.A., of Dodge City, for appellant.

*Kevin Salzman,* county attorney, *Shea O'Sullivan*, deputy county attorney, and *Eliza Kassebaum*, chief deputy county attorney, for appellee.

Before PICKERING, P.J., ISHERWOOD AND HURST, JJ.

PER CURIAM: Ryan Charles appealed his municipal court criminal convictions in two separate cases to the district court, where he was initially represented by counsel. Through no fault of Charles, his attorney withdrew from both cases. Two days later, the district court sent notifications of status/review hearings in both cases, presumably to address the withdrawal of Charles' attorney. Charles attended neither hearing. About two months after the hearings—without any notice to Charles—the district court judges dismissed Charles' appeals for his alleged failure to prosecute.

Charles appeals, claiming the district court violated his due process rights. Under these circumstances, the district court's dismissals failed to provide Charles adequate notice and opportunity to be heard, and as such, the district court's dismissals are reversed and the cases are remanded for reinstatement.

FACTUAL AND PROCEDURAL BACKGROUND

On August 11, 2022, Ryan Charles was convicted and sentenced by the Dodge City Municipal Court (the City) of criminal damage in municipal case No. 21-276838 and domestic battery in municipal case No. 21-279844. A week later, Charles timely appealed both municipal convictions to the Ford County District Court. The criminal damage appeal became district court case No. 2022-CR-538 (case 538) and the domestic battery appeal became case No. 2022-CR-537 (case 537). The cases were assigned to different judges, and Charles was released on his own recognizance with the promise "to appear personally or by counsel in the Ford County District Court of Dodge City, Kansas, from time to time as required by the Court to answer to the complaint."

On November 2, 2022, after filing notices of appeal in municipal court but before appearing in district court, Charles' attorney withdrew from the cases through no fault of Charles. Charles' attorney filed notices of withdrawal with the Ford County District Court, stating that on October 28, 2022, he served the notices by mail to the clerk of the district court, to the city prosecutor, and to Charles. Just two days later on November 4, 2022, the City filed notices of status/review hearings, and the district court scheduled those hearings for December 1, 2022, in case 537 and December 8, 2022, in case 538. The notices provided the date, time, and location of the hearings and contained a blank space in the place to list defense counsel. Each notice certified it was filed in the eFlex system, "which [would] send notice to all counsel of record," but for Charles listed only his name and home address. Charles' address was the same as it had been listed on the initial municipal complaint.

2

Charles failed to appear at either status/review hearing. About two months later, on February 16, 2023, the judge in case 537 filed an order dismissing case 537 because "Defendant fail[ed] to appear" and stated the case should be "dismissed for lack of prosecution and remanded back to City of Dodge City Municipal Court." The next day, February 17, 2023, the judge in case 538 filed an identical order to dismiss that case. No transcript was made of the hearings in either case.

On March 3, 2023, a new attorney filed notices of appearance as counsel for Charles, notices of appeal to this court, and motions to reinstate the appeals to the district court in both cases. A few weeks later, on March 21, 2023, that counsel withdrew, and Charles' original counsel entered his appearance in both cases. This court then granted Charles' motions to docket both appeals out of time. Charles then withdrew his pending motions to reinstate his district court appeals, citing its loss of jurisdiction because of the docketing of the cases with the Court of Appeals. Charles' motion to consolidate both cases for appeal was granted.

DISCUSSION

The only issue on appeal is whether the dismissal of Charles' appeals under these circumstances violated his due process rights. Charles claims that there were various procedural mechanisms the courts should have or could have taken to notify him of the upcoming hearings and their potential effect on his cases and to ensure his appearance. However, the procedures taken failed to give him adequate notice or opportunity to be heard. The City claims that Charles was adequately notified of the hearings, including the date, time, and location. The circumstances and procedures used to dismiss both of Charles' district court appeals are the same for the purpose of this court's analysis and conclusion, so the references herein to Charles' appeals or the district court apply equally to both consolidated appeals.

3

This court reviews the district court's decision to dismiss Charles' appeals for an abuse of discretion. See *City of Wichita v. Catino*, 175 Kan. 657, 658, 265 P.2d 849 (1954). A court abuses its discretion when its decision is based on an error of fact or law or is so arbitrary, fanciful, or unreasonable that no reasonable person would take the same view as the court. *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023). Charles carries the burden to establish that the district court abused its discretion. See *State v. Keys*, 315 Kan. 690, 708, 510 P.3d 706 (2022). Appellate review under the abuse of discretion standard necessarily "'includes review to determine that the discretion was not guided by erroneous legal conclusions.'" *Kuhn v. Sandoz Pharmaceuticals Corp.*, 270 Kan. 443, 456, 14 P.3d 1170 (2000). When, as here, a district court is alleged to have abused its discretion by erroneous legal analysis or application constituting a violation of Charles' due process rights, this court exercises unlimited review of those legal conclusions or applications. See, e.g., *State v. Gonzalez*, 290 Kan. 747, 755-56, 234 P.3d 1 (2010).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of the law; nor deny to any person . . . the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). The Fourteenth Amendment affords two different but coexistent types of due process rights—substantive and procedural. Substantive due process rights arise when the government encroaches on a fundamental liberty interest, such as the right to bear and raise children. See *County of Sacramento v. Lewis*, 523 U.S. 833, 845-47, 118 S. Ct. 1708, 140 L. Ed 2d 1043 (1998); *Washington v. Glucksberg*, 521 U.S. 702, 720-21, 117 S. Ct. 2258, 138 L. Ed 2d 772 (1997). Procedural due process rights are related to the way the government takes actions and require that the government give the person the opportunity to be meaningfully heard before being deprived of their life, liberty, or property. See U.S. Const. amend. XIV, § 1; *Mathews v.*

*Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"). Procedural due process requires that a person receive adequate notice and an opportunity to explain or defend themselves before the government impedes their protected right or liberty interest. *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 13, 98 S. Ct. 1554, 56 L. Ed. 2d 30 (1978); see *Villa v. Kansas Health Policy Authority*, 296 Kan. 315, 331, 291 P.3d 1056 (2013).

Charles asserts a procedural due process claim, alleging he was deprived of his rights without a meaningful opportunity to be heard because the hearing notices failed to inform him of the potential dismissal of his cases. Specifically, the notices did not describe the purpose of the hearing, notify him that his attendance was required, or notify him that failure to attend could result in dismissal. The City contends that the notices contained all required information, which included the date, time, and location of the hearings.

While the district court has wide discretion to control its docket and dismiss causes of action for failure to prosecute, that discretion is not unfettered. See *Catino*, 175 Kan. at 658-60 (affirming the district court's dismissal of appeals from municipal code convictions for lack of prosecution). The district court must still meet minimum due process requirements in its procedures, including dismissals. See *Evitts v. Lucey*, 469 U.S. 387, 393, 105 S. Ct. 830, 82 L. Ed. 2d 821 (1985) (A State's appellate procedures must "comport with the demands of the Due Process and Equal Protection Clauses of the Constitution."). In determining whether the procedures the district court followed to dismiss Charles' appeals satisfy constitutional due process requirements, this court considers the three factors set forth in *Mathews*:  (1) the individual interest at stake; (2) the risk of erroneous deprivation of that interest; and (3) the State's interest in the procedure used and the additional or substitute procedures, including the fiscal and administrative burdens it would entail. See 424 U.S. at 334-35.

There can be no dispute regarding the first *Mathews* factor. Charles' municipal convictions carry a possible term of incarceration, fines, and a litany of collateral consequences which impact Charles' life and liberty; and the Legislature created a statutory right for defendants, like Charles, to appeal those convictions. See K.S.A. 22-3609(a) ("The defendant shall have the right to appeal to the district court of the county from any judgment of a municipal court which adjudges the defendant guilty of a violation of the ordinances of any municipality of Kansas or any findings of contempt."). After appealing to the district court, the unsatisfied defendant can then appeal to the Kansas Court of Appeals. K.S.A. 22-3602 provides: "[A]n appeal to the appellate court having jurisdiction of the appeal may be taken by the defendant as a matter of right from any judgment against the defendant in the district court." While due process may not require that defendants receive the right to appeal, once a State establishes that right it must then ensure defendants' due process rights are protected through that process. *Evitts*, 469 U.S. at 393; *Griffin v. Illinois*, 351 U.S. 12, 18, 76 S. Ct. 585, 100 L. Ed. 891 (1956). Charles' claim satisfies the first *Mathews* factor—dismissal of his appeals under K.S.A. 22-3609(a) implicated a protected liberty interest. See 424 U.S. at 335.

This court next considers the second *Mathews* factor—the risk of erroneous deprivation of the right to appeal through the procedures used and the probable value, if any, of additional procedural safeguards. *Mathews*, 424 U.S at 335. Charles' attorney, through no fault of Charles, withdrew from representing him. In response to that withdrawal, the City noticed a hearing in each case called a status/review hearing—just two days later, the district court scheduled the hearings for December 1 and 8, 2022, and caused notices of those hearings to be electronically filed and mailed. The notices identified the hearings as status/review hearings and provided the date, location, and time with no other directions, description, or purpose. According to the City's appellate brief, it believed the status/review hearings were standard practice used "to determine how the defendant would like to proceed—to retain counsel, obtain court-appointed, or proceed

6

pro se" and to "[ensure] the defendant is aware of his rights to representation and [avoid] unnecessary delay of the trial calendar."

The City's assumption regarding the purpose of the December 1 and December 8 status/review hearings was reasonable, particularly considering Charles had recently lost his retained counsel and the district court had not yet made any inquiry regarding his ability or desire to obtain replacement counsel. See *City of Overland Park v. Estell*, 225 Kan. 599, 603, 592 P.2d 909 (1979). In *Estell*, the Kansas Supreme Court explained the procedure for determining whether a defendant should be appointed counsel on appeal from a municipal proceeding as follows:

> "1. On the defendant's first appearance before the district court on the appeal, he or she should be present with retained counsel if one has been so employed;
> "2. If defendant has not employed counsel and seeks the appointment of counsel, he or she should be present with the counsel originally appointed by the municipal court;
> "3. The district court, upon such request for appointment of counsel, should make the determination as to whether the defendant is indigent in accordance with K.S.A. 22-4504;
> "4. If the district court determines the defendant is indigent, it should inquire of the originally appointed counsel whether he or she is able to continue the representation;
> "5. If such defense counsel is able to serve, ordinarily he or she should be appointed to represent the defendant. Provided, however, the district judge has the discretion, in the interest of justice, to appoint a different attorney; and
> "6. The determination of indigency shall be subject to review at any time by any judge of the district court before whom the case is pending, pursuant to K.S.A. 22-4504." *Estell*, 225 Kan. at 603-04.

There is no record of the district courts making such an inquiry in either case.

Although Charles does not assert a claim regarding the courts' failure to follow the procedural safeguards identified in *Estell*, the absence of those safeguards demonstrates the risk of deprivation of Charles' due process rights under the district court's dismissal process used in both cases. Charles had no notice before or after the status/review hearings that the district court would be considering motions to dismiss his appeals. In this case, where the district court dismissed Charles' appeals after he failed to appear at those first hearings—after his counsel recently withdrew and before the district court determined whether Charles would retain new counsel or seek appointed counsel—there was a high risk of deprivation of Charles' due process rights without adequate safeguards.

Finally, under the third *Mathews* factor, there would be little to no burden on the State to limit or prevent the deprivation of Charles' due process rights through an alternative procedure. See *Mathews*, 424 U.S. at 335. The City describes the typical practice of these hearings as one in which the court determines how the defendant would like to proceed regarding his legal representation—not for consideration of a motion to dismiss. If the district court intended to consider dismissal at the status/review hearings, it could have simply included that purpose in the same notices it sent to the parties without any additional cost or time to the court. However, if the district court only considered dismissal of Charles' appeals after he failed to appear at the December 1 and 8 status/review hearings, then the court could have ruled on the dismissals after notice of such intent, with or without a subsequent hearing. The district court regularly receives oral and written motions for dismissal for various reasons and has well-established procedures for notifying parties of their right to respond to such motions either in person, in writing, or both. In fact, the district court did not immediately dismiss Charles' appeals after he failed to appear but issued the orders to dismiss about two months later, on February 16 and February 17, 2023. Thus, there was ample time between Charles' failure to appear at the December 1 and 8 status/review hearings for the district court to notify

8

Charles of the potential dismissals and afford him an opportunity to respond before dismissing the appeals. In sum, the district court had several well-established methods to adequately notify Charles of the potential for dismissal of his appeals at little to no added time or cost to the State.

While the failure to notify a defendant of the potential for dismissal does not always violate the defendant's due process rights, under these circumstances it did. See *Link v. Wabash R. Co.*, 370 U.S. 626, 632, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962) ("The adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct."). Here, Charles was represented by counsel in his appeals to the district court, and just two days after his attorney withdrew (at no fault of Charles), the district court noticed a status/review hearing in both cases. The timing of the court's notices and the procedures outlined in *Estell* demonstrate that the status/review hearings were likely intended to address the withdrawal of Charles' attorney—which is what the City believed would occur at the December 1 and 8 hearings. Yet the district courts considered dismissal before they determined how Charles would proceed with his appeals—whether he would retain new counsel, request appointed counsel, or proceed pro se—and without notice to Charles of the risk of dismissal. Under these circumstances, Charles did not receive adequate notice or opportunity to be heard regarding the dismissal of his appeals. It is "highly important that drastic procedure in dismissing an action involving the rights of citizens be exercised with the utmost care." *City of Ogden v. Allen*, 208 Kan. 573, 576, 493 P.2d 277 (1972).

While the district courts cited Charles' "failure to prosecute" as the reason for dismissal, such a reason typically involves some allegation of repetitive failures to act, failure to act after notice and understanding of the proceedings, and adequate notice of the potential for dismissal. The district court dismissed Charles' appeals at the very first hearing in the cases shortly after his attorney withdrew and without any prior incident

9

where Charles failed to appear or otherwise respond to the court. In fact, had Charles' cases been civil rather than criminal, the district court would have been required to provide notice of the risk of dismissal. See K.S.A. 2024 Supp. 60-241(b)(2). In a civil action, a party must either file a motion to dismiss—of which the other party would receive notice and an opportunity to respond—or on its own initiative, the court may only dismiss a case "without prejudice for lack of prosecution . . . after notice to counsel of record, not less than 14 days prior to the intended dismissal . . . ." K.S.A. 2024 Supp. 60-241(b)(2). To be clear, a district court is not required to follow the procedure in K.S.A. 2024 Supp. 60-241(b) before dismissing a defendant's appeal of their municipal court criminal conviction. However, there are necessary minimum procedural due process standards for notice and an opportunity to be heard before a court can dismiss such a case—and none of those occurred here.

CONCLUSION

The district court erred when it dismissed Charles' appeals of his municipal court criminal convictions without providing him adequate notice and opportunity to be heard. The dismissals are reversed, and the cases are remanded for reinstatement in the district court.

Reversed and remanded with directions.